BUCK ET AL. *v.* GALLAGHER, STATE TREASURER, ET AL.

No. 329. Argued January 10, 1939.—Decided April 17, 1939.

96

*Mr. Thomas G. Haight,* with whom *Messrs. Louis D. Frohlich* and *Herman Finkelstein* were on the brief, for appellants.

*Mr. Alfred J. Schweppe,* with whom *Messrs. G. W. Hamilton,* Attorney General of Washington, *John E. Belcher,* Assistant Attorney General, *Edwin C. Ewing, Ralph E. Foley,* and *Sam M. Driver* were on the brief, for appellees.

MR. JUSTICE REED delivered the opinion of the Court.

This is an appeal, under § 266 of the Judicial Code, from a decree dismissing appellants' bill to enjoin the enforcement by the appellees of a statute of the State of Washington.[1] The purpose of the statute is to render illegal certain activities carried on by pools of copyright owners in authorizing by blanket licenses the performance of their musical compositions.

The statute declares it unlawful for two or more persons holding separate copyrighted works to pool their interests in order to fix prices for their use, to collect fees or to issue blanket licenses for their commercial production. Joint undertakings for this purpose are permitted if the licenses are issued at rates assessed on a per piece system of usage. All combinations of owners of separate copyrighted musical works are required to file a complete list of these works once each year with the secretary of state of the State of Washington, together with detailed information as to prices and ownership. There are numerous other provisions unnecessary to detail.

The appellants are the American Society of Composers, Authors and Publishers; Gene Buck, suing in his own name and as the president of the Society; and a number of other members, corporate publishers and authors, composers or their next of kin. This suit was brought by complainants on behalf of themselves and others similarly situated, members of the Society too numerous to make it practicable to join them as plaintiffs in a matter of common and general interest. The bill alleges the organization of the Society as a voluntary, unincorporated,

[1] *Buck* v. *Case*, 24 F. Supp. 541. Washington Laws 1937, c. 218, p. 1070.

non-profit association under the laws of New York, and sets out that its purpose is to protect the owners of copy-righted musical works against piracies, to grant licenses and to collect royalties for the public performance for profit of the compositions of its members. These are composers, authors and publishers of musical compositions or their successors. The royalties and license fees collected by the Society are distributed from time to time, as ordered by the Board of Directors, among the members of the Society, after the payment of expenses of operation and sums due to foreign affiliated societies and after the deduction of a limited reserve fund.

In addition to the general allegation that the value of the matter in dispute is in excess of $3,000, the bill alleges that the value of each publisher's copyrights exceeds $1,000,000. The bill further shows that each individual complainant has rights to royalties and renewals worth in excess of $100,000. It is shown by the bill that in the State of Washington there were five hundred twenty-eight contracts outstanding in 1936, all entered into in the name of the Society, from which it received more than $60,000 and that similar sums annually will be collected. Other allegations are discussed later.

On the filing of the bill, a motion was made for an interlocutory injunction and affidavits were filed in support of the request. At the time the motion for a temporary injunction came on for hearing, the defendant state officers and certain intervenors filed motions to dismiss which challenged the bill on various grounds. The district court considered only one ground: whether the value of the subject matter in dispute is more than $3,000, exclusive of interest and costs. Upon the hearing, the district court found that neither the bill nor the records shows the necessary jurisdictional value and dismissed the bill. The basis for this ruling is treated here.

Although this statute of Washington, as that of Florida,[2] is aimed at the power exercised by combinations of copyright owners over the use of musical compositions for profit, the differences between the enactments and the procedural situations require additional consideration. The Florida statute does not permit any combination of copyright owners for the purpose of licensing the use of their compositions. The prohibition is complete. In the Washington statute, on the other hand, such a combination, federation or pool is not prohibited if it issues licenses "on rates assessed on a per piece system of usage." Even upon these permitted transactions there are limitations of price and use, unnecessary to consider here.[3] The statute is directed particularly at

---

[2] Considered in *Gibbs* v. *Buck, ante,* p. 66.

[3] Washington Laws, 1937, § 3, c. 218, p. 1071, reads as follows: "It shall be unlawful for two or more persons holding or claiming separate copyrighted works under the copyright laws of the United States, either within or without the state, to band together, or to pool their interest for the purpose of fixing the prices on the use of said copyrighted works, or to pool their separate interests or to conspire, federate, or join together, for the purpose of collecting fees in this state, or to issue blanket licenses in this state, for the right to commercially use or perform publicly their separate copyrighted works: *Provided, however,* Such persons may join together if they issue licenses on rates assessed on a per piece system of usage; *Provided, further,* This act shall not apply to any one individual author or composer or copyright holder or owner who may demand any price or fee he or she may choose for the right to use or publicly perform his or her individual copyrighted work or works: *Provided, further,* Such per piece system of licensing must not be in excess of any per piece system in operation in other states where any group or persons affected by this act does business, and all groups and persons affected by this act, are prohibited from discriminating against the citizens of this state by charging higher and more inequitable rates per piece for music licenses in this state than in other states: *Provided, further,* Where the owner, holder, or person having control of any copyrighted work has sold the right to the

the practice of issuing blanket licenses which authorize the performance of all copyrighted material belonging to the licensor. Whether a state statute is regulatory or prohibitory, when a bill is filed against its enforcement under § 266 of the Judicial Code, the matter in controversy is the right to carry on business free of the regulation or prohibition of the statute.[4] Where the statute is regulatory the value of the right to carry on the business, as was said in *McNutt* v. *General Motors Acceptance Corp.*, may be shown by evidence of the loss that would follow the enforcement of the statute. And this loss may be something other than the difference between the net profit free of regulation and the net profit subject to regulation. The difficulties of determining the value of rights by calculating past profits as compared with possible future profits, influenced by the single factor of statutory regulation, are obvious. This difference is not the only test of the value of the right in question. The value of the matter in controversy may be at least as accurately shown by proving the additional cost of complying with the regulation. This factor was not offered in evidence in the *McNutt* case.

In *Packard* v. *Banton*[5] the existence of the jurisdictional amount was partly determined by consideration of the cost of providing liability insurance required by a regulatory statute. Where a state railroad commission required the construction and service of an industrial spur

---

single use of said copyrighted work, where its sole value is in its use for public performance for profit, and has received any consideration therefor, either within or without the state, then said person or persons shall be deemed to have sold and parted with the right to further restrict the use of said copyrighted work or works."

[4] Prohibitory statutes—*Gibbs* v. *Buck, supra;* regulatory statutes—*McNutt* v. *General Motors Acceptance Corp.*, 298 U. S. 178, 181; *Kroger Grocery Co.* v. *Lutz,* 299 U. S. 300, 301.

[5] 264 U. S. 140.

which did not increase earning capacity, the cost was held to measure the jurisdictional amount.[6] The expense of producing the information required by a challenged order in a utility investigation was considered sufficient to establish the value of the matter in controversy.[7] The cost of complying with the challenged statute as a test of the value of the amount in controversy has been applied in effect in suits to enjoin the collection of taxes as unconstitutional interferences with the right to do business. In such cases "the sum due or demanded is the matter in controversy and the amount of the tax, not its capitalized value, is the measure of the jurisdictional amount."[8]

By § 4 of the Washington statute every combination of two or more copyright owners must file, once a year, with the secretary of state, a complete list of their copyrighted works, under oath.[9] By § 3, individuals are forbidden from joining together "for the purpose of collecting fees in this state" unless their licenses are on a per piece system of rates. In addition to the general allegation that the value of the matter in controversy exceeds $3,000, the bill alleges the cost of compliance by the Society, the com-

---

[6] *Western & Atlantic R. Co.* v. *Railroad Comm'n*, 261 U. S. 264, 267.

[7] *Petroleum Exploration, Inc.* v. *Public Service Comm'n*, 304 U. S. 209, 215.

[8] *Healy* v. *Ratta*, 292 U. S. 263, 271, and cases there cited; *Grosjean* v. *Am. Press Co.*, 297 U. S. 233, 241; *Henneford* v. *Northern Pacific Ry. Co.*, 303 U. S. 17, 19.

[9] The list must state that it "is a complete catalogue of the titles of their claimed compositions, whether musical or dramatic or of any other classification, and in addition to stating the name and title of the copyrighted work it shall recite therein the date each separate work was copyrighted, and the name of the author, the date of its assignment, if any, or the date of the assignment of any interest therein, if any, and the name of the publisher, the name of the present owner, together with the addresses and residences of all parties who have at any time had any interest in such copyrighted work."

bination of members, with § 4 would exceed $300,000.[10] For the individual members who now have the benefits of the services performed by the Society, additional allegations set out the cost imposed upon them by the statutory regulation as being "in excess of $10,000" to each for carrying on for themselves the functions now performed for them by the Society. The motions to dismiss deny the general allegation of value, deny that there would be any cost to the Society by compliance with § 4 as the required list is already compiled and the expense, since the Society is non-profit, would be borne by members, and deny that the individual complainants would be put to a cost of $10,000 each. There was no allegation of the loss or cost to the Society or members occasioned by the requirement that the licenses from pooled copyrights should be issued at per piece rates.

On submission of the motion to dismiss for want of the jurisdictional value, the burden of proof was upon complainants.[11] Although the trial court called specific attention to the jurisdictional matters three months before it filed its opinion denying jurisdiction, by request for additional briefs, no evidence was offered. After the filing of the opinion and before the entry of the decree,

---

[10] Specifically the allegation is that "The cost to the Society of attempting to compile the lists and information required to be furnished under the State Statute would be far in excess of $300,000, which sum would have to be expended for research work with reference to the past history of each and every copyright owner, by every one of the 44,000 members of the Society and its affiliated societies, lawyers fees for opinions as to the rights of parties involved with respect to the ownership, grants, licenses and other interests in the respective copyrights, clerical help and other incidental expenses; even with such an expenditure, it would be utterly impossible to furnish an accurate or complete list of all the respective copyrights of the members of the Society and of its affiliated societies with all of the data required by the State Statute."

[11] McNutt v. General Motors Acceptance Corp., 298 U. S. 178, 189.

on complainants' motion an order was entered to show cause why witnesses should not be heard on the value of the matter in controversy. The complainants furnished an uncontroverted affidavit stating that their failure to offer evidence was due to the fact that there was no denial of the facts pleaded. The offer of proof showed that it was desired "to offer the testimony of expert witnesses concerning the cost of complying with the requirements of Section 4 of the Act, and concerning the value of the property rights in question which will be affected by this Statute." The court did not reject the evidence as a matter of discretion because tardily presented. On the hearing on the rule the court made it quite clear that the proffered evidence was deemed immaterial because it showed only cost of compliance, not the value of the right to do business free of the compulsion of the statute.[12] The application to take further testimony was denied and the motion to dismiss granted "in that this cause is not within the jurisdiction of this court as a federal court." We conclude that the refusal to permit additional evidence in these circumstances was error.

The complainants in this case are the same as those in *Gibbs* v. *Buck, supra.* In the *Gibbs* case we pointed out that the members share directly in the earnings of the Society and have a common and undivided interest in

---

[12] E. g., this statement was made by the court: "Perhaps we are somewhat in the fog with respect to the matter you are trying to present but from our viewpoint it seems to us that you are urging that the value of the thing in controversy is to be measured by the cost of doing business or complying with the statute. From our standpoint we think the cost of doing business has nothing to do with the method of doing business. It is true the statute may necessitate a large expenditure but that would not mean anything because by a large expenditure you might make a much larger profit. Perhaps we don't understand each other but I think that is the basis of measuring the value of the matter in controversy."

the right to license in association through the Society free of the provisions of the state statute. The allegations as to relationship between the Society and its members show the same status in this case. The fact that "neither practice nor rule of the committee concerning the apportioning among the Society's members of the pooled license fees realized is shown," [13] does not affect the rights members have in the apportionment of the royalties from license fees. These rights are granted by the articles of association which are a part of the bill. *KVOS, Inc.* v. *Associated Press*,[14] relied upon below, is distinguished in the *Gibbs* case.

The cause will be remanded to the District Court with directions to permit the introduction of evidence and for further proceedings not inconsistent herewith.

*Reversed.*

MR. JUSTICE BLACK dissents.

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

---

[13] *Buck* v. *Case*, 24 F. Supp. 541, 549.

[14] 299 U. S. 269.