**BUCK et al. v. GALLAGHER, State Treasurer of Washington, et al.**

No. 606.

District Court, W. D. Washington, S. D.

Dec. 23, 1940.

G. F. Vanderveer and H. W. Haugland, both of Seattle, Wash., and Louis D. Frohlich and Herman Finkelstein, both of New York City, for complainants.

Smith Troy and John E. Belcher, both of Olympia, Wash., and Alfred J. Schweppe, of Seattle, Wash., for defendant state officials.

B. Gray Warner, of Seattle, Wash., for defendant King County.

Kenneth C. Davis, of Los Angeles, Cal., C. C. Dill, of Spokane, Wash., and Leo Teats, of Tacoma, Wash., for intervener KMO, Inc.

Clark R. Belknap, of Seattle, Wash., for intervener Lockhart.

Before HANEY, Circuit Judge, and BOWEN and BLACK, District Judges.

HANEY, Circuit Judge.

This is a suit to enjoin enforcement of a Washington statute on the ground of its unconstitutionality. Laws 1937, c. 218. The cause has been submitted on an application for a permanent injunction.

Briefly stated, the statute attacked declares it to be unlawful for separate copyright owners to pool the copyrights in order to fix prices, collect fees, or issue blanket licenses for the use of such copyrights, except where the licenses are issued assessing rates on a "per piece" system of usage. The detailed provisions of the statute need not be discussed.

The bill prayed for a permanent injunction restraining defendants from taking any act or proceeding under the statute, and for a decree declaring such statute unconstitutional. It is alleged in the bill that on February 13, 1914, a small group of composers, authors and publishers organized a voluntary unincorporated non-profit association under the laws of New York, which they designated as the American Society of Composers, Authors and Publishers, hereafter called the Society, for the purpose of licensing to users of music throughout the country the right to publicly perform for profit the works of its members. It was further alleged that there are approximately 123 publisher members of the Society and about 1000 writer and composer members of the Society; that such members assign their respective exclusive right of public performance for profit in their respective musical compositions; that similar organizations exist in foreign countries, and the Society has the exclusive right to and does license within the United States, the public performance for profit of the musical compositions copyrighted by all members of such foreign societies; and that the Society's blanket license permits the licensee to use many hundreds of thousands of compositions composed and written by more than 44,000 members of such foreign societies.

It appears that the members assign to the Society the exclusive right of public performance, and the Society then has the exclusive right to permit by licenses, licensees to use or not to use the compositions of the Society's members, to fix the prices for licenses, to sue for infringement, and in general, to manage the right of public performance in the same manner as the owner of the copyright.

The motion to dismiss on behalf of the defendants was based on several grounds, one of which was: "That mere unconstitutionality, even assuming it to exist, does not warrant injunctive relief, but that the facts alleged must bring the case within the recognized rules of equity relating to injunctions, and that complainants have not done so." The motion to dismiss filed by intervener KMO, Inc., states a number of grounds, one being that the plaintiffs are not entitled to equity because they were a monopoly. Although no answers have been filed, we may treat the motions to dismiss as answers. Intervener Lockhart argues the monopoly question, but his motion to dismiss does not present such question. We treat his motion as an answer and amended so as to present the question.

Regarding the completeness of the monopoly of the Society, it is said in Buck v. Swanson, D.C.Neb., 33 F.Supp. 377, 386: "* * * Of the popular music necessary for the successful operation of radio stations, dance halls, hotels and theaters, the society has control of about 85% or 90% and also has control of from 50% to 75% of the standard or older music that is played occasionally. All of the large and more influential publishers of music in the United States are members of the society. The users of music in Nebraska can not successfully carry on their business except they deal with the plaintiff society because there is no place where nor person or agency to whom users of music in Nebraska may go in order to deal for public performance rights and negotiate for music in any substantial amount sufficient to meet the ordinary needs of music users in the state, except the society."

Mr. Justice Black in Gibbs v. Buck, 307 U.S. 66, 81, 59 S.Ct. 725, 733, 83 L.Ed. 1111, says: "* * * This combination apparently includes practically all (probably 95%) American and foreign copyright owners controlling rendition of copyrighted music for profit in the United States. Not only does this combination fix prices through a self-perpetuating board of twenty-four directors, but its power over the business of musical rendition is so great that it can refuse to sell rights to single compositions, and can, and does, require purchasers to take, at a monopolistically fixed annual fee, the entire repertory of all numbers controlled by the combination."

In the instant case the testimony of the operators of two of the largest radio broadcasting stations in Washington was that it would be impossible to operate such stations without the music controlled by the Society. The Society has neither submitted evidence, nor made argument to the contrary.

On the hearing for an injunction pendente lite, we dismissed the cause for lack of jurisdiction. Buck v. Case, D.C., 24 F.Supp. 541. On appeal our decree was reversed with directions to take evidence on the jurisdictional question. Buck v. Gallagher, 307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128. Subsequently, we referred the cause to a special master for the taking of evidence on the question, and directed him to make findings. The special master found facts disclosing jurisdiction in the court below. Believing that the evidence supports such findings, we sustain them as not being clearly erroneous.

■ ○ Plaintiffs contend that the Washington statute is unconstitutional for a number of reasons, and rely on Buck v. Swanson, D.C.Neb., 33 F.Supp. 377, Buck v. Harton, D.C.Tenn., 33 F.Supp. 1014, and Buck v. Gibbs, D.C.Fla., 34 F.Supp. 510, holding somewhat similar statutes unconstitutional. Before passing on that question, it is necessary to determine whether or not plaintiffs may invoke the aid of a court of equity. If a party "has been engaged in an illegal business and been cheated, equity will not help him". Wheeler v. Sage, 68 U.S. 518, 1 Wall. 518, 529. In other words, before plaintiffs may invoke the aid of a court of equity, they must come into court with clean hands. Keystone Co. v. Excavator Co., 290 U.S. 240, 244, 54 S.Ct. 146, 78 L.Ed. 293. If the Society exists in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, it, and the members composing it, are not entitled to a decree for its benefit.

Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, provides in part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in

restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor * * *."

Section 2 of such act, 15 U.S.C.A. § 2, provides in part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

Whatever the distinction between these two sections may be,[1] the Supreme Court has recently said that Congress, by the act in question, "extended the condemnation of the statute to restraints effected by any combination in the form of trust or otherwise, or conspiracy, as well as by contract or agreement, having those effects on the competitive system and on purchasers and consumers of goods or services which were characteristic of restraints deemed illegal at common law". Apex Hosiery Co. v. Leader, 310 U.S. 469, 498, 60 S.Ct. 982, 995, 84 L.Ed. 1311, 128 A.L.R. 1044. The "effects" mentioned were "business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services". Id., 310 U.S. page 493, 60 S.Ct. page 992, 84 L.Ed. 1311, 128 A.L.R. 1044. Such effects were brought about by "contracts for the restriction or suppression of competition in the market, agreements to fix prices, divide marketing territories, apportion customers, restrict production and the like practices, which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the market". Id., 310 U.S. page 497, 60 S.Ct. page 994, 84 L.Ed. 1311, 128 A.L.R. 1044.

■■ There can be little question here that the Society has the power to fix prices for the right to publicly perform compositions for profit. Likewise, it has restricted substantially all competition in the sale of such right, because it has all such rights. Since the interstate commerce feature is conceded to be present, the Society clearly violates the act in question (United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223, 60 S.Ct. 811, 84 L.Ed. 1129) unless the right to publicly perform for profit is not embraced within the act. Upon that point the act says nothing expressly about rights or commodities. The statute is aimed at "restraints" of trade and commerce, and not at the "subjects" of the trade or commerce. Rights may be and often are the subject of trade or commerce, and the Sherman law limits restraints of trade in "rights" as well as commodities. Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 49, 33 S.Ct. 9, 57 L.Ed. 107. The restraint here is the power acquired by the assignments of the Society's members, to deal in a right acquired by copyrights, and thus we have a contract or combination in restraint of trade. Straus v. American Publishers' Ass'n, 231 U.S. 222, 234, 34 S.Ct. 84, 58 L.Ed. 192, L.R.A.1915A, 1099, Ann. Cas.1915A, 369.

Plaintiffs contend that if the activity of the Society "affects trade or commerce, it promotes rather than restrains it". Here, we are not concerned with such question. Congress has decided that if such a combination has acquired power to fix prices, it is an illegal combination in restraint of trade. Plaintiffs further contend that the power to fix prices, as here, is not the odius "price-fixing" condemned by the act in question. They say that while a gallon of oil is the same no matter who sells it, musical compositions are not gallons of oil, but each of them is different. As we have said before, it is immaterial what the subject of the trade or commerce may be. The fact is that the Society has acquired the power to fix the prices at which rights of a particular nature may be purchased by prospective users. We think that is sufficient under the statute.

Buck v. Swanson, D.C.Neb., supra, Buck v. Harton, D.C.Tenn., supra, and Buck v. Gibbs, D.C.Fla., supra, do not involve the point herein taken.

Let the bill be dismissed.

BOWEN, District Judge, concurs.

BLACK, District Judge, concurs in the result.

---

[1] C. E. Stevens Co. v. Foster & Kleiser Co., 9 Cir., 109 F.2d 764, 770.