## FECHHEIMER BROS. CO. v. BARN-WASSER et al.

### No. 9801.

Circuit Court of Appeals, Sixth Circuit.

Jan. 22, 1945.

Francis J. Hanlon, of Covington, Ky. (Francis J. Hanlon, of Covington, Ky., and Falk & Paul, of Cincinnati, Ohio, on the brief), for appellant.

Stephens L. Blakely, of Covington, Ky. (Stephens L. Blakely and Northcutt & Northcutt, all of Covington, Ky., on the brief), for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The appellant Ohio corporation, a mercantile tailoring establishment and manufacturer of suits and uniforms, brought an action in the United States District Court for the Eastern District of Kentucky against more than two hundred named persons as defendants.

The petition filed by appellant alleged that the amount in controversy exceeded three thousand dollars, exclusive of interest and costs, and that all of the defendants were citizens and residents of Kenton County, Kentucky, and were "an unincorporated association of men and women, organized, existing and operating for military purposes in Kenton County, in the State of Kentucky, under the name of the Second Regiment Kentucky Active Militia." It was averred that the appellees, "by their agent and captain, Arthur J. Daly," entered into contracts with appellant for military uniforms and overcoats. The facts upon which the claims against appellees are aggregated to total $3,592.50, a sum in excess of the requisite jurisdictional amount in diversity of citizenship cases, must be gathered from the loose averments of the petition; for the district court sustained motions to dismiss the action for lack of jurisdiction.

The petition states that "on the ——— day of August, 1941," the appellees, by their agent, requested appellant "to take individual measurements of the men of said organization, defendants herein," and that each of the members presented himself and was measured; that on August 29, 1941, after taking the measurements, the appellant made an offer to Captain Daly to manufacture uniforms for privates for $35.50 each, and for officers at $37.00 each; and that, on September 9, 1941, the appellees, by their agent Captain Daly, accepted the offer and entered their order with the appellant for the merchandise. In ensuing paragraphs, the petition averred that the appellees, "members of said organization," by their aforementioned agent, requested submission of an offer for the manufacture of reefers, or overcoats, and

accepted an offer of the appellant merchant tailor to manufacture them for $20.00 each; that, several months later, in the same manner in which the men's uniforms were purchased, the women of the military organization received individually measured uniforms from the appellant manufacturer; and that on March 3, 1942, the alleged agent of the military organization ordered certain listed merchandise for named individual appellees and also ordered, as listed, specified numbers of nickel caduces, chevrons and arm bands, and alteration of uniforms for two named defendants. It was alleged that the uniforms and merchandise were delivered to the defendants; and an itemized account filed as "Exhibit A" to the petition listed the names of the defendants, the merchandise furnished each, the cost of the merchandise furnished each, and the balance due on the account of each. These individual items were aggregated and totaled a cost of $5,092.50, with a total unpaid balance thereon of $3,592.50. The petition avers that the defendants, by their agent, Captain Daly, promised and agreed to pay the account, which became due and payable September 3, 1942; and that appellant had duly performed all of its contracts with the appellees, who were charged with breach of "their contract with the plaintiff"; that appellees "have breached their contract with the plaintiff, in that they have failed and refused to pay to the plaintiff the balance of $3592.50 due on said contracts."

The petition concludes: "The plaintiff has demanded payment of said sum so due from the defendants and each of them, and payment has been refused. Wherefore, the plaintiff prays judgment against the defendants herein, jointly and severally, in the sum of $3592.50 with interest and costs herein and for all just and proper relief."

The foregoing complete analysis of the contents of the petition has been made, inasmuch as the jurisdictional question must be resolved from the averments of the petition.

Eliminating mere conclusions of the pleader, we are unable to find from the factual averments of the petition more than an unwarranted aggregation of claims against numerous individual persons, where diversity of citizenship appears, for the obvious purpose of obtaining jurisdiction in a federal court over subject matter properly justiciable in the state courts of

the locality in which the defendants reside. The petition bares down to a situation where the members of a state militia company merely utilized their captain to procure for them, individually, the required uniforms for their voluntary service in the military organization. Their measurements were individually taken by the merchant tailor, a uniform charge was made for each uniform of the same type; and, through their captain, their orders were received, the uniforms were made and delivered and, as shown by the itemized account exhibited, the charges and credits on account were detailed and listed separately to each member of the militia company, which was unincorporated. No agreement in writing covering the purchase of the uniforms is alleged. That the Second Regiment Kentucky Active Militia could be termed for legal purposes an unincorporated association seems to be a mere conclusion of the pleader. We can spell out from the facts alleged in the petition nothing beyond an agreement that each soldier would pay for his own uniform. To assume that each member of the company intended to become personally bound to pay for the uniform of any or every other member would be quite contrary to observation and experience. In the absence of positive averment that such guarantee was made, it will not be assumed from conclusions of the pleader.

As was pointed out in Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248, successive Acts of Congress from the beginning have limited the jurisdiction of the federal courts, in suits between citizens of different states, to cases involving not less than a specified amount in controversy. This jurisdictional amount has been progressively increased; and "the policy of the statute calls for its strict construction." Chief Justice Stone said: "The power reserved to the states, under the Constitution * * *, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution * * *. See Kline v. Burke Construction Co., 260 U.S. 226, 233, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined. See Matthews v.

Rodgers, supra, at page 525 of 284 U.S., 52 S.Ct. 217, 76 L.Ed. 447; compare Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249."

Appellant contends that jurisdiction in the federal court is supported by Civil Procedure Rule 20, 28 U.S.C.A. following section 723c to the effect that "all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Rule 20 must, of course, be considered within the delimitation of Civil Procedure Rule 82, which provides that "these rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein."

The permissive joinder under Rule 20 cannot confer jurisdiction upon the federal courts by the aggregation of claims of the same character against numerous defendants, so as to vest jurisdiction in the federal courts in contravention of the Act of Congress pertaining to jurisdiction based on diversity of citizenship. 28 U.S.C.A. § 41. The same is true of Civil Procedure Rule 23, relating to class actions.

Jurisdiction cannot be conferred on a federal trial court by joining in one action, against distinct defendants, claims of which none reached the requisite jurisdictional amount. Citizens' Bank v. Cannon, 164 U.S. 319, 322, 17 S.Ct. 89, 41 L.Ed. 451. The plaintiff is not entitled to secure jurisdiction in the federal court by joining separate defendants whose aggregate indebtedness to him exceeds the jurisdictional amount, unless the test of jurisdiction of joint liability of the defendants to him be met. Walter v. Northeastern R, Co., 147 U.S. 370, 373, 374, 13 S.Ct. 348, 37 L.Ed. 206. See also Northern Pacific R. Co. v. Walker, 148 U.S. 391, 13 S.Ct. 650, 37 L.Ed. 494.

Likewise, numerous complainants may not aggregate the amount of their separate interests in the same subject matter of litigation to total the requisite jurisdictional amount, and thereby confer jurisdiction on a federal court. Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469. Compare Sturgeon v. Great Lakes Steel Corporation, 6 Cir., 143

F.2d 819; Eberhard v. Northwestern Mut. Life Ins. Co., 6 Cir., 241 F. 353; Wales v. Jacobs, 6 Cir., 104 F.2d 264.

It is a settled general rule that, in a suit based on diversity of citizenship brought against several defendants on separate and distinct claims depending for their validity upon a common origin, the test of jurisdiction is the amount of each separate claim and not the aggregate amount of the claims. Woodmen of the World v. O'Neill, 266 U.S. 292, 295, 45 S.Ct. 49, 69 L.Ed. 293.

Mr. Justice Bradley, in Clay v. Field, 138 U.S. 464, 479, 480, 11 S.Ct. 419, 425, 34 L.Ed. 1033, made a clear-cut statement: "The general principle observed in all is, that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone."

Gibbs, Attorney General v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111, does not, in our opinion, weaken the binding authority of the Supreme Court decisions which have been cited. In that class action, brought in behalf of the members of the American Society of Composers, Authors and Publishers, the showing was made that the members had a common and undivided interest, and so the aggregation of the financial interests of the members to attain the requisite jurisdictional amount in controversy was considered permissible. Compare Buck v. Gallagher, State Treasurer, 307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128. No such community of interest has been revealed in the instant case.

Yates v. Whyel Coke Co., 6 Cir., 221 F. 603, 605, 606, is not in point. In that case, cited by appellant, the action was brought on a contract for the sale of coke, each month's deliveries to be treated "as a separate and independent contract." The plaintiff pleaded, as a single cause of action, the entire loss claimed to have been sustained for the several months covered by the contract. The aggregate of the plaintiff's monthly claims against the same defendant exceeded three thousand dollars, exclusive of interest and costs. The requisite jurisdictional amount was held to be involved.

Nor does Ackman v. Northern States Contracting Co., 6 Cir., 110 F.2d 774, 776, support appellant's position. There, a class action on behalf of wage claimants was brought against sureties and contractors who had constructed a sewer system for the city of Lexington, Kentucky, under P. W. A. contracts, where the controlling object was the enforcement of liability upon bonds executed for the benefit of persons employed by the contractors; and a fund common to all plaintiffs and others of their class was involved. This court held that, such fund being in excess of three thousand dollars, exclusive of interest and costs, a motion to remand the cause to the state court was properly denied. The case is not remotely comparable to the case at bar.

We find no relevancy in the decision of this court in Cox v. Government Employees Insurance Co., 6 Cir., 126 F.2d 254, cited by appellant. In that case, an unincorporated association, a machine gun troop of a United States Cavalry Regiment, had procured automobile liability insurance on a truck owned by it. Judgments had been obtained in a Kentucky state court against an enlisted trooper for damages for personal injuries caused by the negligent operation of the truck by the soldier. The insurer obtained a declaratory judgment in the district court, affirmed here, that the soldier was not insured by virtue of the terms of the policy, where the injuries caused by him resulted from the use of the truck for his own personal purposes, in violation of troop regulations and contrary to the command of his superior officers. The machine gun troop was regarded as having no legal entity distinct from the persons composing it. No issue of diversity of citizenship, or jurisdictional amount, was involved.

The order of the district court, dismissing the instant action, is affirmed.