KOSTER et al. v. TURCHI et al.

Civ. A. No. 7755.

District Court, E. D. Pennsylvania.

April 8, 1948.

Thomas I. Guerin, of Philadelphia, Pa., for plaintiffs.

E. D. Dupree, Jr., Asst. Gen. Counsel, Hugo V. Prucha, Chief Rent Litigation Unit and Francis X. Riley, Litigation Atty. Office of Housing Expediter, all of Washington, D. C., and Cyril F. Pessolano, Chief, Litigation Unit and Conrad G. Moffett, Enforcement Atty., both of Philadelphia, Pa., for Joseph T. Turchi.

Joseph P. Gaffney, of Philadelphia, Pa., for City of Philadelphia.

GANEY, Judge.

This is a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to dismiss the complaint concerning an action in which the plaintiffs seek (1) equitable re-

lief from special orders issued by the Philadelphia Area Rent Director increasing the maximum monthly rents of dwelling houses occupied by them, and (2) to restrain their landlord from demanding such increased maximum rents and to require it to refund to them the excess of the increased rents over the former rents already collected by it.

· The action is brought by the plaintiffs for themselves as individuals and as a committee on behalf of the Girard Estate Tenants Association, of which they are members. The Association is composed of approximately three hundred persons who are tenants of dwelling houses located in a section of Philadelphia known as Girard Estate, the landlord of which is the City of Philadelphia, Trustee under the Will of Stephen Girard. In May of 1942, the Price Administrator entered a general order freezing the rents which the tenants of Girard Estate were then paying under their respective yearly leases as the maximum legal rents which could be demanded from them by their landlord. Five years later, on June 6, 1947, after petition for adjustments in rent had been filed by the City of Philadelphia, the Area Rent Director issued approximately four hundred eighty one (481) individual orders increasing the maximum rents of an approximately similar number of dwelling houses in Girard Estate. The increases, which in some instances amounted to thirty-three per cent and were in amounts greater than those requested in the landlord's petition or petitions, for the individual dwellings were not uniform for the same type of housing accommodations, and, in many cases, the maximum rent fixed for one dwelling was greater than the maximum fixed for another with better and more valuable housing accommodations. Moreover the orders fixed the same maximum rents for every month, despite the fact that the then cur-

rent leases provided for lower rents during the four summer months when household heating was not supplied by the landlord. Issuance of the orders were made without notice to the tenants of the prior filing of the petition or for increases by the City of Philadelphia, or that action upon them was contemplated by the Area Rent Director which would affect their interest adversely. Four days later the plaintiffs and other members of the Association requested the Rent Director to vacate the orders increasing the maximum rents and sought permission to inspect petition or petitions for increases and supporting evidence submitted therewith by the City. In addition they asked to be supplied with information from which they might determine whether or not the maximum rents fixed by him for their dwellings were the same or similar to the maximums fixed for other dwellings of comparable locations, sizes and accommodations. In the alternative, the tenants requested the Rent Director to suspend the orders until a full hearing could be had to permit them to present evidence in their own behalf against such increases. These requests were refused. On or about June 26, 1947, the City gave notice to the tenants of Girard Estate that their leases would be terminated on July 31, 1947, and that they would be required to sign new ones at the maximum legal rents, beginning August 1, 1947. In compliance with these notices, the members of the Association reluctantly executed the new leases at the increased maximum rents.[1] In the meantime before the usual time within which protests might have been filed by the tenants under the Price Administrator's regulations [2] then in effect, the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., on June 30, 1947, expired.

The asserted legal basis for the complaint is that the Area Rent Director's or-

---

[1] The maximum yearly rentals, payable in monthly installments, of the plaintiffs were increased as follows: (a) Donald N. Koster, $642 to $810, an increase of $168 (26%); (b) Willard Smith, $600 to $798, an increase of $198 (28%); (c) Thomas J. Brady, $696 to $906, an increase of $210 (30%); (d) Joseph A. Connolly, $738 to $990, an increase of $252 (34%); and (e) Samuel F. Smith, $612 to $810, an increase of $198 (32%).

[2] See Sec. 1300.216 of Revised Procedural Regulation No. 3, issued January 12, 1943, 8 Fed.Reg. 526, as amended, 32 CFR, Cum.Supp. 1300.201 et seq.; 32 CFR, 1945 Supp. 1300.207 et seq.

ders have deprived the members of the Association of their property without due process of law in violation of the Constitution and that the orders were not issued in accordance with law and were arbitrary and capricious. On the other hand, the defendants, in addition to claiming that the plaintiffs have no legal standing to maintain this action and that the complaint fails to state a claim upon which relief can be granted, contend that this court lacks jurisdiction over the subject matter of this action.

Section 203(a) of the Emergency Price Control Act set forth that any person "subject to" a regulation or order issued by the Price Administrator could file a protest in accordance with the regulations prescribed by the Administrator. Upon the denial of his protest by the Administrator, a person "aggrieved" could file within thirty days after the denial, a complaint in the Emergency Court of Appeals. Id. Sec. 204(a). Equitable relief against the regulations or orders of the Administrator could be obtained only in the Emergency Court of Appeals with the right of review by certiorari in the Supreme Court of the United States, for the authority to determine the validity of an order or regulation was reposed exclusively in these courts. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019; 87 L.Ed. 1339.

▇▇ Even if we assume that under Parker v. Fleming, 329 U.S. 531, 67 S.Ct. 463, 91 L.Ed. 479, the plaintiffs in the case before us were "subject to" the orders of the Administrator within the meaning of Sec. 203(a) of the Emergency Control Act and that they had a right to file protests against such orders [3], the Emergency Court of Appeals, by its own rulings, is without jurisdiction to grant the relief sought here. That Court held in Talbot v. Woods, Em. App., 164 F.2d 493, that its residual jurisdiction preserved by section 1(b) of the Act did not give it authority to determine the retroactive or prospective validity of a regulation or order of the Price Administrator unless a civil or criminal enforcement proceeding had been brought based upon a past violation alleged to have been committed while the Act and regulations thereunder were still in effect. To the same effect is Standard Kosher Poultry, Inc., v. Clark, Em.App., 163 F.2d 430. The case before us is obviously neither a civil or a criminal enforcement proceeding predicated upon an alleged violation of the Emergency Price Control Act. The segment of jurisdiction taken away from the Emergency Court of Appeals did not revert, nor has it been transferred, to the federal district courts. Creedon v. Stratton, D.C. Neb., 74 F.Supp. 170, 180.

▇▇ After June 30, 1947, the date on which the Emergency Price Control Act expired, rent controls are imposed solely by force of the Housing and Rent Act [4] of 1947. This Act is constitutional. Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S. Ct. 421. Section 203(a) of the Act provides: "After the effective date of this title, no maximum rents shall be established or maintained under the authority of the Emergency Price Control Act of 1942, as amended, with respect to any housing accommodations." Section 204(b) adopted the maximum rents established under the expired Act. These rents are subject, however, to a power in the Housing Expediter, by regulation or order to make adjustments concerning them, as may be necessary to correct inequities, or to remove them entirely.[5]

---

[3] See Tenants' Standing to Attack OPA Orders, 42 Ill.L.Rev. 119, 124 (1947).

[4] Act of June 30, 1947, c. 163, Title II, § 201 et seq., 61 Stat. 196–201, 50 U.S. C.A.Appendix, § 1891 et seq. For an analysis of this Act and its comparison with the expired Emergency Price Control Act of 1942, as amended, see Willis, The Federal Housing & Rent Act of 1947, 47 Col.L.Rev. 1118 (1947). The Act was extended for thirty-one days by Public Law 422, 80th Cong., 2nd Sess., 50 U.S.C.A.Appendix, §§ 1884(a), 1894(a, f), and subsequently amended by the Housing and Rent Act of 1948, approved March 30, 1948.

[5] "Under the present Act the Housing Expediter is authorized to remove the rent controls in any defense-rental area if in his judgment the need no longer exists by reason of new construction or satisfaction of demand in other ways. The powers thus delegated are far less extensive than those sustained in Bowles

▮ Pursuant to the authority vested in him by Sec. 204(d) of the Act, the Housing Expediter issued controlled Housing Rent Regulation [6] and Rent Procedural Regulation 1.[7] Section 840.59 of the latter regulation provides in part as follows: "Where no request for administrative review was filed prior to July 1, 1947, the provisions of this part [regulation] shall be applicable to any such review." This section puts the plaintiffs in no better position than any other tenant under the Act. When a tenant is of the opinion that his rent is too high and his landlord is of a contrary view, the tenant's only remedy, without vacating the premises or defending eviction proceedings, is to file an application for decrease in maximum rent in accordance with Sec. 5 of Rent Procedural Regulation 1. This section states: "Tenants application, for decrease in maximum rent regulations shall be filed with the rent director for the defense rental area within which the housing accommodations involved are located. The application for decrease in maximum rent shall be filed on forms prescribed by the Housing Expediter. Action thereon shall be within the *discretion* of the rent director * * *"[8]. (Emphasis supplied). No provision is made for review or for an appeal to the Housing Expediter of the rent director's exercise of discretion under this section of the regulation, and none is intended.[9] Nor is direct judicial review of action taken by the Housing Expediter and his subordinates provided for in the Act. Section 2(a) of the Federal Administrative Procedure Act, as amended, 5 U.S.C.A. § 1001(a), has been reamended [10] so as to exclude from its operation the functions conferred by the Housing and Rent Act of 1947. Unless direct judicial review is permitted by statute, either expressly or by implication [11], none exists. Stark et al. v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 88 L.Ed. 733. A review of the history of the Act will not help the tenants' cause. Consequently, whatever relief this court could grant the members of the Association would come as the result of our exercise of the broad general jurisdiction which Congressional statutes have conferred upon the federal district courts.

For the purpose of ruling on the motion to dismiss the complaint, we shall assume, without so deciding, that the tenants have a legal standing to seek the relief sought in this action,[12] and that the Act has not deprived us of any part of the broad general

---

v. Willingham, 321 U.S. [503], at pages 512–515, 64 S.Ct. [641], page 647, 88 L. Ed. 892. Nor is there here a grant of unbridled administrative discretion. The standards prescribed pass muster under our decisions. See Bowles v. Willingham, supra, 321 U.S. pages 514–516, 64 S.Ct. [641], pages 647, 648, 88 L.Ed. 892, and cases cited". Woods v. Cloyd W. Miller Co., 333 U.S. 138, 144, 145, 68 S.Ct. 421, 424, 92 L.Ed. ——. Section 303 of the Housing and Rent Act of 1948 provides in part that "nothing in this Act shall be construed to affect any adjustment in maximum rent made in accordance with the Housing and Rent Act of 1947". 50 U.S.C.A.Appendix, § 1904.

6 12 Fed.Reg. 4331, (1947).

7 12 Fed.Reg. 5916, (1947).

8 There is no allegation in the complaint setting forth that the members of the Association have complied with the provisions of this section.

9 See Secs. 840.8(b), 840.23, 840.25 and Subpart B of Rent Procedural Regulation I.

10 50 U.S.C.A.Appendix, § 1900.

11 "Where Congress has not expressly authorized judicial review, the type of problem involved and the history of the statute in question become highly relevant in determining whether judicial review may be nonetheless supplied". Switchmen's Union v. National Mediation Board, 320 U.S. 297, 303, 64 S.Ct. 95, 97, 88 L.Ed. 61.

12 "However, even where a complaint possesses a claim to executive action beneficial to him, created by federal statute, it does not necessarily follow that actions of administrative officials, deemed by the owner of the right to place unlawful restrictions upon his claim, are cognizable in appropriate federal courts of first instance. * * * To reach the dignity of a legal right in the strict sense, it must appear from the nature and character of the legislation that Congress intended to create a statutory privilege protected by judicial remedies". Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 569, 88 L.Ed. 733.

Whether a plaintiff has the standing requisite to the maintenance of an ac-

jurisdiction to give that relief [13]. But compare City of Atlanta v. Ickes, 308 U.S. 517, 60 S.Ct. 170, 84 L.Ed. 440; Switchmens' Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61, and what was said in both the majority and dissenting opinions in Stark et al v. Wickard, supra. Under the above assumptions, this action is a case of a civil nature in equity and arises under the Constitution and laws of the United States [14]. Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 379, 5 L.Ed. 257; Osborn v. Bank of the United States, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204.

According to the facts set forth in the complaint, the only possible statute which would give this court jurisdiction to act is Section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1). This section, as far as is relevant here, provides that the federal district courts shall have original jurisdiction " * * * of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States * * * ". Thus the presence of a federal question alone is insufficient to invoke the jurisdiction of this court under this section; the statutory amount must also be involved. Gavica et al. v. Donaugh, 9 Cir., 93 F.2d 173, 175; Cooney v. Legg, D.C.S.D. Cal., 34 F.Supp. 531.

If the increments in rent of all the tenants were aggregated, the statutory minimum of $3,000.00 would be easily exceeded. But this cannot be done in this action. "It is a familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements. Whe-

less v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583; Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883." Clark v. Paul Gray, Inc., et al, 306 U.S. 583, 589, 59 S.Ct. 744, 748, 83 L.Ed. 1001. In the case before us, the claim of each tenant, even though a common question of law is involved, is separate and distinct from that of the other. Gavica v. Donaugh, supra. The fact that they have banded into an unincorporated association does not alter the situation. The leases concerning the dwelling houses in question were entered into between the individual tenants and the landlord and not between the Association or the members as such and the landlord. Eaton v. Hoge, 8 Cir., 141 F. 64; Bateman et al. v. Southern Oregon Co., et al., 9 Cir., 217 F. 933; Howard v. Linnhaver, D.C.Or., 228 F. 523; Pioneer Coal Co. v. Bush, D.C. Ky., 16 F.Supp. 117; appeal dismissed Kentucky-Jellico Coal Co. v. Chitwood, 6 Cir., 99 F.2d 1008.

It is true that Rules 18, 20 and 23 of the Federal Rules of Civil Procedure permit almost unlimited joinder of claims and parties in one action. This does not mean that the amount in controversy of claims which, prior to the effective date of the Rules, could not be aggregated, may now be. Rule 82 [15] is a constant reminder that the Rules may not be so interpreted. The class action in this case is not a true class action as in Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 and Buck v. Gallagher, 307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128, noted in 52 Harv.L.Rev. 1360 (1939); but a "spurious" class action in which aggregation of claims is not permitted. Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Deckert, 3 Cir., 123 F.2d 979, 984; Black & Yates, Inc. et al. v. Mahogany Ass'n. Inc. et al, 3 Cir., 129 F.2d 227, 236, 148 A.L.R. 841;

---

tion has been held to be a question going to the merits. General Investment Co. v. N.Y.C.R.R., 271 U.S. 288, 46 S. Ct. 496, 70 L.Ed. 920; Walling v. Miller, 8 Cir., 138 F.2d 629.

[13] See Note, 51 Harv.L.Rev. 1251 (1938).

[14] See Bergman, Reappraisal of Federal Question Jurisdiction, 46 Mich.L.Rev. 17 (1947).

[15] This Rule provides: "These rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein".

274

Pentland et al. v. Dravo Corp., 3 Cir., 152 F.2d 851, 853; Shipley et al. v. Pittsburgh & L. E. R. R., D.C.W.D.Pa., 70 F.Supp. 870, 875, 876; 2 Moore's Federal Practice (1946 Supp.), Sec. 23.08, pp. 107-108. Therefore, in determining whether the jurisdictional amount is involved, the claim of each member of the Association must stand on its own feet.

■ Taking the increment of rent of the plaintiff Joseph A. Connolly [16] which is alleged to have been the greatest, it would require the passage of over eleven years before the jurisdictional amount would be attained with respect to his claim. The Housing and Rent Act of 1947 has been amended by the Act of 1948 so that it will expire March 31, 1949. Even if we assume that the Act will be re-amended so as to be operative for several more years, Connolly's claim will not reach the jurisdictional amount [17]. See Elliott v. Empire Natural Gas Co., 8 Cir., 4 F.2d 493; Hock v. 250 Northern Ave. Corp., 2 Cir., 142 F.2d 435; In re Seitz, D.C.E.D.N.Y., 60 F.Supp. 462. It follows that the individual claims of the other members of the Association do not involve the jurisdictional amount.

Accordingly, the complaint is dismissed for want of jurisdiction.

---

[16] See note 1(d), supra.

[17] In Healy v. Ratta, 292 U.S. 263, at pages 270, 271, 54 S.Ct. 700 at page 703, 78 L.Ed. 1248, the court said that "in suits to enjoin the collection of a tax payable annually or the imposition of penalties in case it is not paid, the sum due or demanded is the matter in controversy, and the amount of the tax, not its capitalized value, is the measure of the jurisdictional amount". While in Clark v. Paul Gray, Inc., 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001, a suit to enjoin the enforcement of a state statute which required fees totaling $15 for each automobile driven into the state for sale, the Court held that the amount in controversy "is the amount of the fees or taxes which would normally be collected during the period of the litigation * * *."