AUTOTRONIC SYSTEMS, INC., a Delaware Corporation, Plaintiff-Appellant,

v.

CITY OF COEUR d'ALENE, an Idaho Municipal Corporation, Defendant-Appellee.

No. 74–1870.

United States Court of Appeals, Ninth Circuit.

Dec. 5, 1975.

Donald W. Lojek and Eugene C. Thomas (argued), Moffat, Thomas Barrett & Blanton, Boise, Idaho, for plaintiff-appellant.

William D. McFarland (argued), Coeur d'Alene, Idaho, Scott W. Reed (argued), Coeur d'Alene, Idaho, for defendant-appellee.

## OPINION

Before DUNIWAY and GOODWIN, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

This case challenges the constitutionality of an ordinance of the City of Coeur d'Alene, Idaho, on three grounds: a) due process; b) equal protection; and c) undue burden on interstate commerce. Coeur d'Alene's ordinance provides:

> That no gasoline tanker having a tank capacity of more than one thousand five hundred (1,500) gallons shall be used in the delivery of gasoline in the Municipality to be sold at retail.

Plaintiff (Autotronic) sought but was denied relief in the District Court. Its jurisdiction was based on 28 U.S.C. § 1331[1]; ours, upon 28 U.S.C. § 1291.

Autotronic operates a retail, self-service gas station called "Fill-em-Fast" in Coeur d'Alene. Gasoline is normally delivered to Coeur d'Alene from Spokane, Washington—a distance of about 30 miles—by gasoline tanker trucks with capacities of approximately 8,500 gallons. Autotronic is forestalled by this ordinance from receiving deliveries directly from the Spokane wholesale distributors. The large tankers must unload their gasoline at bulk stations. Smaller tankers— of 1,500 gallons—must then transport the gasoline from the bulk stations to plaintiff's and to other retail stations. This increases Autotronic's costs by about 1 cent per gallon, or $2,500 per month.

Autotronic contends that the ordinance increases rather than decreases the dangers to public safety. Its evidence in the trial court showed that the ordinance re-

---

* The Honorable James M. Burns, U.S. District Judge for the District of Oregon, sitting by designation.

1. Plaintiff has met the amount in controversy requirement by showing that the cost of compliance with the City's ordinance during the period of litigation would exceed $10,000. *Buck v. Gallagher,* 307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128 (1939); *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). No allegation of lost profits is required. *Buck v. Gallagher, supra.*

sults in multiple trips and multiple handling (6 for 1) of the gasoline; the greatest danger of accident exists during the handling process; transfer to the above ground tanks by pressure at the bulk plants is more dangerous than transfer to underground tanks by gravity at service stations; larger tankers have more safety devices than smaller tankers and are more resistant to rupture than smaller tankers.

Autotronic's evidence also showed that its retail station is located in a safe place for unloading the larger tankers; that the tankers pass by the station on their way to and from the bulk plant; the larger tankers can, if they wish, enter and park at the station. The only thing they cannot do is to connect their hoses and unload gasoline into the retail station's underground tanks. Autotronic insists this result is so irrational as to deny due process.

In addition, Autotronic's evidence showed that the ordinance allowed the large carrier to enter and deliver their 8,500 gallon loads to bulk plants within the city, but not to retail stations. These classifications—among truck sizes and permitted delivery points—are said to be so lacking in rationality as to deny equal protection.

Coeur d'Alene's evidence, largely from the City Engineer and the City Fire Chief, was that the ordinance promotes rather than retards public safety. Not all retail stations are in locations that can handle easy ingress and egress of large tankers. In the event of a large spill the bulk plants are generally in locations where the danger to people from the spilled gasoline or resulting fire is less than at retail stations. The fire department of Coeur d'Alene is small. It would be hard-pressed to handle a fire from a 1,500 gallon tanker, but overwhelmed by a fire from an 8,500 gallon spill. The Fire Chief had had experience handling a fire of about 1,200 gallons of gasoline at a bulk plant. He thought the ordinance was a protection against a larger fire within Coeur d'Alene. In addition, the sewer system is such that a witness for Coeur d'Alene thought a large gasoline spill within the city presented a fire danger to a near-by marina and pollution dangers to nearby Coeur d'Alene Lake. Based on this evidence, the District Court denied relief to Autotronic.

■ The standard for evaluating ordinances claimed to be violative of due process or equal protection is whether a rational basis exists for the police power exercised or classification established by the ordinance. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

■ We have before us, as did the District Court, two opposing theories. It is not our function to decide which view is wiser; our role is at an end once we can say that the view chosen by the City council is not irrational. *North Dakota St. Bd. of Pharm. v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 164–167, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Williamson v. Lee, supra,* 348 U.S. at 488, 75 S.Ct. 461; *Ferguson v. Skrupa, supra,* 372 U.S. at 729–732, 83 S.Ct. 1028. We do not sit as a "Super City Council" any more than we do as a "Super Zoning Board" (*Constr. Indus. Ass'n of Sonoma County v. City of Petaluma,* 522 F.2d 897, 906, 9th Cir. 1975), or a "Super-legislature" (*Ferguson v. Skrupa, supra,* 372 U.S. at 731, 83 S.Ct. 1028).

■ Although six separate state appellate courts have refused to uphold similar ordinances,[2] we think the evi-

2. *In re Martin,* 88 Nev. 666, 504 P.2d 14 (1972); *Humble & Refining Co. v. City of Georgetown,* 428 S.W.2d 405 (Tex.Civ.App. 1968); *City of Colorado Springs v. Grueskin,* 161 Colo. 281, 422 P.2d 384 (1966); *Clark Oil & Refining Corp. v. City of Tomah,* 30 Wis.2d 547, 141 N.W.2d 299 (1966); *Ex parte Rodgers,* 371 S.W.2d 570 (Tex.Cr.App.1963);

*McCoy v. Town of York,* 193 S.C. 390, 8 S.E.2d 905 (1940).

Federal jurisdictions, other than the case before this court, have not considered tanker limitations, although one trial court refused to uphold limitations on underground tanks. *Standard Oil Co. v. City of Gadsen,* 263 F.Supp. 502 (N.D.Ala.1967).

dence before the trial judge was sufficient to enable him to find a rational basis for the ordinance. *Leathers v. City of Burns,* 251 Or. 206, 444 P.2d 1010 (1968). The trial judge found that the City Council reasonably weighed competing risks of increased exposure to accidents from multiple trips of smaller tankers against the dangers of a larger gasoline spill within the city. The trial judge had sufficient evidence to find that the City Council was reasonable in concluding that a larger fire could be handled more safely at a bulk plant than at a retail station. This does not mean Autotronic's witnesses are without credibility. As was said by Justice Lusk in *Leathers v. City of Burns, supra* at 219, 444 P.2d at 1016:

> The opinions of the eminent experts who testified that Ordinance No. 350 increases, rather than reduces, the danger of gasoline fires, are assuredly entitled to respectful consideration. The facts upon which they base their opinions are not in dispute and their conclusions are reasonable, but the question is whether the City Council of Burns could reasonably have reached a different conclusion.

Although it may have been wiser on Coeur d'Alene's part to have reached the contrary conclusion, we cannot say that the City Council acted irrationally in the exercise of its police power. We affirm the trial court's finding that the ordinance does not violate the Due Process or Equal Protection Clauses of the United States Constitution.

■ We further affirm the trial court's finding that the ordinance does not place an undue burden on interstate commerce. Although there is some increase in price passed on to the interstate traveler, and the interstate tankers must drive past the retail station to the bulk plant, the burden is not so great that it outweighs any safety advantage. *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959).