**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**Ruby Fay CHINOWITH, Appellee.**

**No. 25188.**

United States Court of Appeals
Fifth Circuit.

May 2, 1968.

Rehearing Denied June 18, 1968.

---

was "pulmonary hydrothorax due to extensive metastasis from melanocarcinoma". In lay language this meant that a watery collection on the lungs was the immediate cause of death, but this condition was caused by one of the many forms of cancer. Chinowith had had a rather extensive melanoma removed from his body in 1959 but periodic x-rays had been negative up to a not definitely fixed time prior to his death. It appears that in 1953 he had injured his back in a fall from a tree.

In July, 1964, Chinowith sustained an on-the-job injury when some heavy pipe he was unloading slipped and caught his legs between a load of pipe and the pipe wrack. This injury prompted the suit here on appeal. In the District Court, the widow, suing for herself and four minor children of the deceased, recovered a Workmen's Compensation judgment for $13,916.75 and the insurance carrier appeals.

At the trial below the defendant rested on the plaintiff's proof and moved for a directed verdict, which was denied. A motion for judgment notwithstanding the verdict was also denied. These denials, in addition to the denial of a plea of no jurisdiction, are now pressed as erroneous. We find that the District Court had jurisdiction of the diversity action but we are of the opinion that the motion for a directed verdict should have been granted. Accordingly the judgment must be reversed.

We discuss first the jurisdictional question. Appellant strongly urges that the sole and exclusive right of each of the workmen's compensation claimants is separate and apart from the right of the other, therefore their separate claims cannot be aggregated in order to supply the required jurisdictional amount in a diversity action. This contention is squarely supported by the decision of the United States District Court for the Western District of Texas in Employers Mut. Cas. Co. v. Maggart, 261 F.Supp. 768 (1966). The point is here argued extensively by both sides, with much

Richard A. Hall, Branscomb, Gary, Thomasson & Hall, Corpus Christi, Tex., for appellant.

Bob J. Spann, McDonald, Spann & Smith, Corpus Christi, Tex., for appellee.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

James C. Chinowith died in a hospital in Corpus Christi on April 2, 1965, his fortieth birthday. The cause of death recited in the official death certificate

citation of authority, none exactly in point other than *Maggart*. Our analysis of the Texas statute, Art. 8306, Sections 8 and 8a, of the Texas Revised Civil Statutes Annotated (1923) convinces us that it confers *one right of recovery and one amount to be recovered*, even though that recovery must be divided according to the Texas laws of descent and distribution. This being true, if the one amount sought under one right of action exceeds $10,000, as was the case here, then diversity jurisdiction may be exercised, Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L. Ed.2d 890 (1961); Purdy v. Aetna Casualty and Surety Co., 5 Cir., 1961, 296 F. 2d 196.

On the question of liability the parties had to agree and do agree that, in order to recover, plaintiff-appellees were required to establish the following sequence: (1) Chinowith sustained an injury on July 25, 1964 which (2) necessitated surgery on March 12, 1965, during which (3) a pre-existing cancerous condition was aggravated and accelerated, which (4) caused the death three weeks later. Chinowith's original injury and death are, of course, clearly established. It is extremely doubtful that Step 2 was proven and we find no evidence in the record to support a favorable answer as to Step 3.

The doctor who diagnosed Chinowith's condition immediately prior to the surgery of March 12, 1965, and who performed the operation which succeeded in the correction of a back condition, did not take the witness stand. Neither did the orthopedist who saw Chinowith the previous August, after which he returned to work. For medical proof, plaintiffs relied altogether on the testimony of the company doctor who saw and treated deceased immediately after the July injury but had not professionally seen him since. By request this doctor had assisted in the surgery of March 12 but did not see the patient thereafter. This leaves gaping chasms in the proof as to both *necessity* and *causation*. The doctor came to the witness stand with-

out his office notes or records. Consequently, as any busy physician would likely be, he was often vague, indefinite, and uncertain in response to crucial inquiries. There was much discussion of a hypothetical or theoretical nature but the underlying facts upon which such hypotheses or theories might have been supported were not supplied.

We now view the evidence in that light most favorable to the plaintiff-appellee.

Without the clutter of repeated quotation marks the following is a fair résumé, in almost his exact words, of the testimony of Dr. Sidney C. Ray, the physician in question.

I saw Mr. Chinowith in my office within forty-eight hours after the injury to his legs. I put him on medication for pain, heat to the contused areas on his thighs and an enzyme preparation to help "resolve the bruising". The patient had sustained severe bruises to the upper ⅓ of both thighs, where the drill pipe had struck him. He was complaining of severe pain and walked with a limp. X-rays of the thighs revealed no fracture. There was some limitation of motion at the knee and the hip because of muscle damage. There was a collection of blood and fluid under the skin on the left thigh, known as a hematoma. I prescribed heat and the enzyme preparation and might have refilled his pain medication. The patient appeared to be in his late twenties or early thirties [although he was actually thirty-nine]. He was quite robust and possibly slightly overweight. His general health appeared to be good. I continued to see the patient "intermittently from July through September, and the condition in his legs resolved, and in early September had completely resolved."

In late August he had gotten to the point where he could walk without a limp. And other than for a small nodule in the thigh, he seemed to have made a complete recovery. The nodule was a little knot which is under the skin, which is palpable, and which we felt was a

hematoma or a collection of probably old blood and fluid from his initial injury. The nodule was in the subcutaneous tissue, it was not a part of the bone and was freely movable. Although I cannot be certain without consulting my records the nodule had disappeared before Chinowith returned to work in September.

In the middle of August I sent the patient to see Dr. Wright because he was complaining primarily of his thighs. He did not complain of his back on the initial visit. And as a matter of fact, not until several visits later did he complain of any back discomfort. While he was under my care he later complained of back pain.

When Chinowith was released to return to work he was complaining of some very mild low back pain and of a little tenderness in his thigh. I saw the patient in October, when he complained that his back pain had gotten worse. I strapped his back muscles. I cannot say that I saw Chinowith after this consultation in October, but I know he did go back to see the orthopedist.

In March, 1965, Dr. Jack Upshaw phoned and asked if I would assist in surgery, doing a disk operation and spinal fusion on Mr. Chinowith.

Dr. Upshaw found a small bony overgrowth, an osteophyte, which was causing pressure on a nerve root and also some disk pressure. He did a curet and removed the disk from one of the disk spaces and the osteophyte. An osteophyte, such as observed in Mr. Chinowith's back, is somewhat a part of the normal aging process. In younger people they often develop at sites of trauma or as a result of abnormal stress or strain. The osteophyte [spur, in common language] would grow at the site of an injury and in a man of his age, probably.

[When Dr. Ray was called upon to express an opinion as to whether or not the osteophyte was the result of an injury to Mr. Chinowith's back he said, I think the acid test, or the best way to tell, would be to review his old x-rays with Dr. Upshaw and see if he has any osteophyte on his other vertebra. This was not done.]

Dr. Ray continued:

After the disk and osteophyte had been removed we made an incision over his right ilium, as I recall, and we were going to get some bone from his ilium to perform the fusion, what we call a homograft. When we got into the cancellous bone of the ilium, the bone looked abnormal. Dr. Upshaw sent some of this to the pathologist for examination. The pathologist did not do a section right then but he came up and told us that this might very well be metastatic melanosarcoma, particularly with the man's history of having had a previous malignant melanoma. We got some bone from the bone bank. The operation, in so far as the back, the remission of symptoms, back pain and radiating leg pain, from the medical standpoint, was successful. I did not follow the patient after the operation.

When we found the malignant melanoma, Dr. Upshaw made the statement that he wished he had x-rayed the man's lungs previously, because had we done this we may not have done the surgery. We were not aware that there was anything wrong with the lungs. The lungs had not been x-rayed immediately before surgery.

This completes the résumé of Dr. Ray's testimony.

From October, 1964, until two or three days before the surgery, deceased worked as assistant manager and manager of a filling station, for which he received compensation of $65 and $75 per week. His wife testified that his back hurt him all during this time. A filling station employee who did not always work the same shifts with Mr. Chinowith, but who saw him at irregular intervals, said that Chinowith's back gave him so much trouble that frequently he could not stand up, so he would sit for awhile and then get up again. Other than the pain in the back, neither of these witnesses gave any tangible reason, no medical expla-

nation, connecting the July injury with the March surgery. We must remember the patient did not at first complain of any back injury when treated by Dr. Ray in 1964. It is nowhere shown either that the osteophyte was caused by the 1965 injury or that it caused the back pain. As to the latter, Dr. Ray strongly inferred to the contrary.

The doctor specifically declined to say that the injury of July 25, 1964 caused the cancer that resulted in Mr. Chinowith's death. He never offered the opinion that the injury of July 25, 1964 caused or contributed to the necessity for or advisability of the back surgery of March 12, 1965. The orthopedist and the surgeon who performed the operation and who, presumably, would have known more than anyone else about this subject were not put on the witness stand, as already mentioned.

So, the proof that the injury necessitated the surgery is exceedingly thin, at the best, but we need not decide the case on this point.

The fatal flaw is found in the fact that nowhere did any witness say, or offer the opinion, that cutting into the ilium to obtain the piece of bone, within reasonable probabilities, aggravated or accelerated the cancer that caused the death. Dr. Ray stated that surgery at the site of a cancerous condition can accelerate it, flare it up, and carry it to other parts of the body, causing it to show up at some other place. Nowhere in this record do we find him offering the medical opinion that incising the ilium, within reasonable probability, aggravated or accelerated the cancerous condition which caused the death, see Insurance Company of North America v. Myers, Tex., 411 S.W.2d 710 (Tex.Sup. Ct., 1966).

Courts must be fair, impartial, and objective. It is not necessary, however, that they be indifferent or unsympathetic toward widows and orphans. Even so, the plaintiffs had to offer something of reasonably probative value to show that incising the ilium aggravated or accelerated the cancer and that this

contributed to the fatality. The failure to do this compels reversal of the judgment below and entry of judgment here for the appellee, Neely v. Martin K. Eby Const. Co., Inc., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).

Reversed and rendered.