POTRERO HILL COMMUNITY ACTION
COMMITTEE, etc., et al., Appellants,

v.

The HOUSING AUTHORITY OF the
CITY AND COUNTY OF SAN
FRANCISCO, Appellee.

No. 22012.

United States Court of Appeals
Ninth Circuit.

April 24, 1969.

Marvin Kayne (argued), Stafford L. Smith, Terry Hatter, San Francisco, Cal., Jack Greenberg, Leroy D. Clark, Charles S. Ralston, Gilbert T. Graham, New York City, for appellants.

Donald B. King (argued), San Francisco, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and McNICHOLS, District Judge *.

DUNIWAY, Circuit Judge:

This appeal is from a judgment of dismissal entered after the district court granted a motion to dismiss the complaint, without leave to amend. The plaintiffs seek to raise important questions as to the extent to which, if at all, tenants in a federally financed, low-rent housing project may assert claims against the local housing authority in the federal courts. We affirm because the trial court lacks jurisdiction.

In support of its motion to dismiss, the defendant Housing Authority filed an affidavit which states certain facts as to the status of the individual plaintiffs as tenants in the housing project in question. No counter affidavit was filed. Thus we are required to treat the order as one granting a motion for summary judgment. Rule 12(b), Fed.R. Civ.P. However, the facts stated in the affidavit do not contradict most of the facts stated in the complaint. Therefore, for the purpose of this appeal, we accept the factual allegations of the complaint as true, except to the extent, if any, that they are contradicted by the affidavit, the allegations of which we also accept as true. The complaint pleads two claims for relief, which we summarize.

---

* Honorable Ray McNichols, United States District Judge, District of Idaho, sitting by designation.

## I. *The Complaint.*

**1.** *The first claim for relief.* The plaintiffs are Potrero Hill Community Action Committee and 27 individuals. The Committee is unincorporated, and is composed of tenants residing in the Housing Authority's Potrero Hill Project in the City and County of San Francisco. The Committee's stated purpose is to promote and protect the common interests of all tenants in the Project. Each of the named plaintiffs is a tenant in the Project, and a member of the Committee. The suit purports to be on behalf of all other similarly situated tenants in the Project, who are said to be too numerous to be conveniently joined in the action.

The Housing Authority was created under the Housing Authorities Law of California, Cal.Health & Safety Code, Div. 24, Part 2, § 34200 *ff.* It is a "public housing authority" as defined in the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 *ff.* See 42 U.S.C. § 1402(11). The Project was constructed with federal funds, under the terms of that Act, and the United States has entered into an "annual contributions contract" with the Housing Authority, pursuant to the Act. See 42 U.S.C. § 1410. That contract imposes upon the Housing Authority the duty of maintaining the Project in a decent, safe and sanitary condition (while maintaining its low-rent character). The Housing Authority has failed and refused and continues to fail and refuse to fulfill that duty. There are detailed allegations as to the respects in which the Project is claimed to be neither decent, safe, nor sanitary.

Because of a shortage of adequate low-cost housing in San Francisco, plaintiffs are prevented from finding housing elsewhere and are made to suffer irreparable harm and degradation from being forced to live in such deplorable circumstances.

**2.** *The second claim for relief.* This claim adds that California law, under which the Housing Authority was created, has as its purpose providing decent, safe and sanitary dwelling accommodation for persons of low income. Each tenant in the Project occupies a dwelling space under a lease on the belief and understanding that the Housing Authority would maintain the premises in a decent, safe and sanitary condition, and that the lease requires that it do so. The lease does so require. Plaintiffs' duty to pay rent is dependent upon the Housing Authority's performance of that duty. Each named plaintiff has received a notice of eviction, and the Housing Authority has filed or threatens to file, an unlawful detainer against each in the San Francisco Municipal Court. The purpose of each action is to frustrate the efforts of plaintiffs to obtain the repairs of the premises to which they are entitled. If evicted, each plaintiff will suffer irreparable injury, and be denied access to housing in San Francisco for which he can afford to pay.

**3.** *The prayer for relief.* The complaint asks a declaratory judgment that the Housing Authority is under a duty to maintain the premises in a decent, safe and sanitary condition, and to make all necessary repairs to attain that condition; that present conditions are not decent, safe and sanitary, and that those conditions are the result of the Housing Authority's breach of duty to the plaintiffs; that the leases require the same duty on the part of the Authority; and that plaintiffs' duty to pay rent is dependent on the Housing Authority's duty, and that the lease contains a covenant to that effect. Specific enforcement of the claimed duty is requested, by means of mandatory injunction.

Regarding the eviction actions, the prayer seeks an injunction restraining the Authority from proceeding further, or from enforcing any judgments already obtained against plaintiffs.

## II. *Jurisdiction.*

Plaintiffs rely for jurisdiction upon 28 U.S.C. § 1331. We hold that their reliance is misplaced.

The statutory base for plaintiffs' claim of a federal question is the United States Housing Act of 1937 and the Housing Act of 1949, which, as amended, are

found in Title 42, Chapter 8, §§ 1401–1436 of the United States Code. Chapter 8 generally provides for federal low-rent housing assistance. The Declaration of Policy in 42 U.S.C. § 1401 states the goal of providing "decent, safe, and sanitary dwellings for families of low income * * *." The Department of Housing and Urban Development (HUD) administers the federal low-rent housing program guided by the provisions of Chapter 8 and the Declaration of Policy in section 1401.[1] Plaintiffs seek to step into the HUD-Housing Authority administrative relationship insofar as they ask for court enforcement of the Housing Authority's duty to provide "decent, safe and sanitary" housing. They assert the right to enforce this duty as private litigants who are the intended beneficiaries of the duty. The low-rent-housing provisions, however, do not expressly confer a civil remedy upon a tenant of a local public housing agency. Thus, plaintiffs' federal claim depends upon the propriety of implying a private federal cause of action from Chapter 8's low-rent-housing provisions and the annual contributions contract.

Under 28 U.S.C. § 1331, assuming that a federal claim is asserted, the amount in controversy must be greater than $10,000. Plaintiffs seek to reach the required monetary amount by aggregating their claims as a class. But, before questions of aggregation are reached, we first meet the problem of whether the project residents' claims are of sufficient amount even if aggregated. The claims are difficult of precise monetary valuation. The second cause of action seeks to declare the tenants' right to withhold rent until the premises have been repaired. At the time the trial court heard the motion to dismiss, the total of rentals withheld or not paid by the complaining residents was allegedly $6,037.89. This sum is obviously insufficient

for jurisdiction. The first claim, however, requests that the project premises be repaired and otherwise brought up to "decent, safe and sanitary dwellings." If the tenants' claims of deterioration of the premises are true, the repair for an 800 unit project like the Potrero Hill Project would exceed $10,000 in cost. Thus, on the authority of such cases as Hunt v. New York Cotton Exchange, 1907, 205 U.S. 322, 336, 27 S.Ct. 529, 51 L.Ed. 821 and In re Sawyer, 9 Cir., 1956, 256 F.2d 553, 554 n. 1, the requisite jurisdictional amount has been met if aggregation is proper. See also Horton v. Liberty Mutual Ins. Co., 1961, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890. But there is no allegation that the claim of any one tenant exceeds $10,000.

The Housing Authority does not contest the propriety of plaintiffs bringing their suit as a class action. The suit falls within the terms of Rule 23(b) (2), Fed.R.Civ.P., which provides for the maintenance of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class * * *." Further, the class is numerous, a single question of law is presented common to the class and apparently the interests of the class will be adequately protected. See Rule 23(a), Fed.R.Civ.P.

Nonetheless, permitting plaintiffs to sue as a class does not provide the answer to the question of whether it is proper to aggregate the claims of individual members of the class to reach the requisite jurisdictional amount. The Supreme Court recently has reaffirmed the distinction between interests which lead to aggregation of claims and interests which are proper subjects for class representation. In Snyder v. Harris, 1969, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 the Court held that despite the changes made in Rule 23, Fed.R.

1. See Housing Assistance Administration, Department of Housing and Urban Development, Low-Rent Management Manual, preface (June 1968). Prior to 1967 administration was entrusted to the Public Housing Administration. Pub.L. 90–19 § 2(b), 81 Stat. 20 (1967), relocated the functions to the United States Housing Authority in the Department of Housing and Urban Development.

Civ.P., regarding class suits, aggregation is still proper only

"(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. at 1056.

Here our concern is whether a tenant in the Potrero Hill Project has a "single right" shared with other tenants similarly situated as to which all have a "common and undivided interest." For aid in resolving this question, *Snyder* directs us to consider the standards heretofore developed by it and other, lower courts. See 394 U.S. at 341, 89 S.Ct. 1059.

Commercial interests have been characterized most easily by the decisions. The requisite single right in which all have a common and undivided interest has been found in a single tract of land claimed by an Indian tribe (Skokomish Indian Tribe v. France, 9 Cir., 1959, 269 F.2d 555), a workmen's compensation recovery ultimately required to be distributed by state descent law (Insurance Company of North America v. Chinowith, 5 Cir., 1968, 393 F.2d 916), and retainage funds assigned to secure a subcontractor's notes (Sterling Construction Co. v. Humboldt National Bank, 10 Cir., 1965, 345 F.2d 994).

But the present action does not readily lend itself to an analysis which relies upon property concepts. In like circumstances, other courts have turned to distinguishing between interests which could only be asserted by pluralistic entities as such and interests which were asserted by individuals but which involved questions of fact and law common to the group.[2] Taxpayer suits are an example of this approach. A line of cases in the Supreme Court beginning with Russell v. Stansell, 1881, 105 U.S. 303, 26 L.Ed. 989 refuses to allow aggregation of the individual taxpayer's claims for jurisdictional purposes.[3] Yet one case, Brown v. Trousdale, 1891, 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987 allows aggregation of such claims. Professor Moore attributes the exceptional case to a finding that the action there was based on a public right, not on personal claims as were the others, and therefore that "the amount in controversy is the aggregated claims of the class, that is, the public's claim."[4] 3A Moore's Federal Practice ¶ 23.13, at 3482 (2d ed., 1968).

Also, in Snyder v. Harris, *supra*, the Court discussed and partially relied upon Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001. In *Clark* a number of parties jointly brought a suit which challenged the validity of a California statute requiring a $15 fee on each automobile driven into the state for sale. The Court refused to aggregate the claims despite the common questions of law and similar questions of fact involved. Yet on the same day on which *Clark* was handed down, aggregation was allowed in Gibbs v.

---

2. Prior to the 1966 amendments to Rule 23, Fed.R.Civ.P., courts stated that they would aggregate claims for jurisdictional purposes in "true" class actions but not in "hybrid" or "spurious" class actions. See, e.g., Knowles v. War Damage Corp., 1948, 83 U.S.App.D.C. 388, 171 F.2d 15. Snyder v. Harris, *supra*, does not perpetuate the terms used to designate the now-obsolete categories of class actions, but *Snyder* nonetheless retains the substance of the earlier rule.

3. See Williams v. Riley, 1929, 280 U.S. 78, 50 S.Ct. 63, 74 L.Ed. 175; Scott v. Frazier, 1920, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883; Rogers v. Hennepin

County, 1916, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Wheless v. City of St. Louis, 1901, 180 U.S. 379, 21 S. Ct. 402, 45 L.Ed. 583; Colvin v. City of Jacksonville, 1895, 158 U.S. 456, 15 S.Ct. 866, 39 L.Ed. 1053. See also Fuller v. Volk, 3 Cir., 1965, 351 F.2d 323.

4. A similar theory has been carried over to derivative shareholder suits. Aggregation of individual shareholder claims is allowed in such actions on the theory that the shareholders are suing for the corporation, not themselves. See Koster v. Lumbermens Mutual Casualty Co., 1947, 330 U.S. 518, 523–524, 67 S.Ct. 828, 91 L.Ed. 1067.

Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111, and Buck v. Gallagher, 1939, 307 U.S. 95, 59 S.Ct. 740, 83 L.Ed. 1128. In the *Buck* cases the plaintiffs sought to enjoin enforcement of state statutes which affected the ability of copyright holders to associate together to license copyrighted musical compositions. The Court viewed the subject matter of the suits as the right to license *in association* free of the provisions of the respective state statutes.

The question before us then is whether the Potrero Hill residents' claims derive from rights which they hold in group status. Relevant to this question is a series of cases which arose out of wartime legislation imposing federal rent control. In Koster v. Turchi, 3 Cir., 1949, 173 F.2d 605, the court refused to aggregate tenant claims where the tenants sought to enjoin rent increases ordered by a rent director. Aggregation of tenant claims was also refused in Miller v. Woods, 1950, 87 U.S.App.D.C. 324, 185 F.2d 499, where the plaintiffs sought to enjoin termination of Federal Rent Control in Los Angeles. See also Fox v. 34 Hillside Realty Corp., S.D.N.Y., 1948, 79 F.Supp. 832; Spieler v. Haas, S.D. N.Y., 1948, 79 F.Supp. 835; cf. Gullo v. Veterans' Coop. Housing Association, D.D.C., 1952, 13 F.R.D. 11. Then too, in Alfonso v. Hillsborough County Aviation Authority, 5 Cir., 1962, 308 F.2d 724, individual homeowners asserted rights to be free of interference from low-flying aircraft which were approaching nearby airport runways. In *Alfonso* common questions of law or fact were presented, but the interests were none-theless, held by the individual homeowners and not by the group as such. Aggregation was denied.[5]

When we look to the facts of the present case, we find that plaintiffs have not shown any rights peculiar to the tenants of the Potrero Hill Project as a group. Rather their rights appear to arise only from the status of each as individual lessee of a portion of the project premises. Each project resident holds his own lease which confers benefits on the one' hand and prescribes duties and obligations on the other, and these rights and obligations exist only between the single tenant and the Housing Authority. Accordingly, no "single right in which all have a common and undivided interest" has been shown, and the claims of the individual tenants cannot be aggregated. Since no one claim reaches the minimum jurisdictional amount, jurisdiction in this action cannot rest upon 28 U.S.C. § 1331.

The result we reach has been foreseen by writers on welfare subjects,[6] and by the majority and the dissenters in Snyder v. Harris, *supra*. See 394 U.S. at 338, 342, 89 S.Ct. 1058, 1060. See also King v. Smith, 1968, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118.

In the present case, despite the presence of federal questions, no jurisdictional basis appears to be available which does not require that an amount in controversy of over $10,000 be shown. Plaintiffs have not alleged any justification for bringing the suit under the Civil Rights section of the Judicial Code, 28 U.S.C. § 1343.[7] Nor does it appear

---

5. One writer suggests that Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527, cert. denied, 1950, 340 U. S. 823, 71 S.Ct. 57, 95 L.Ed. 605, would allow aggregation in a "spurious" class action, a class action category applied to facts such as those in *Alfonso*. See Note, Review of State Welfare Practices, 67 Colum.L.Rev. 84, 111 n. 163 (1967). Brotherhood is hopelessly in conflict with such decisions as Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951, and Hughes v. Encyclopedia Britannica, Inc., 7 Cir., 1952, 199 F.2d

295, and accordingly we will not follow it here. See also Snyder v. Harris, *supra*, 394 U.S. at 336, 89 S.Ct. 1057.

6. See Note, Review of State Welfare Practices, 67 Colum.L.Rev. 84, 111–115; cf. Note, Public Landlords and Private Tenants: The Eviction of "Undesirables" From Public Housing Projects, 77 Yale L.J. 988, 1002–1003 & notes 73–76 (1968).

7. Compare Norwalk Core v. Norwalk Redevelopment Agency, 2 Cir., 1968, 395 F.2d 920, 926 n. 6; Green Street Asso-

that the rights which they assert arise under "any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337. The Housing Acts constitute welfare legislation for purposes of section 1337, despite the fact that they probably do have some incidental effect on commerce. *Cf.* Schatte v. International Alliance of Theatrical, etc., Operators, S.D.Cal., 1947, 70 F.Supp. 1008, aff'd, 9 Cir., 1948, 165 F.2d 216. Thus, the district court had no jurisdiction to entertain this action and properly dismissed it, albeit for other reasons.

Affirmed.

ciation v. Daley, 7 Cir., 1967, 373 F. 2d 1, 4; Johnson v. Redevelopment Agency of City of Oakland, California, 9 Cir., 1963, 317 F.2d 872, 874 (by implication).

