Rubylee DAVIS et al., Appellants in
No. 73–1249.

v.

George W. ROMNEY, Individually and in
his capacity as Secretary of Housing
and Urban Development, et al., Appellants in No. 73–1420.

Nos. 73–1249, 73–1420.

United States Court of Appeals,
Third Circuit.

Argued Sept. 25, 1973.

Decided Jan. 14, 1974.

As Amended Jan. 28, 1974.

George D. Gould, Sally Akan, Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs-appellants in No. 73–1249 and for plaintiffs-appellees in No. 73–1420.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., for appellees in No. 73–1249 and for appellants in No. 73–1420.

Israel Packel, Atty. Gen., J. Justin Blewitt, Jr., Deputy Atty. Gen., amicus curiae.

Before SEITZ, Chief Judge, and HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiffs are five purchasers of homes whose mortgages were insured by the Federal Housing Administration (FHA). Insurance on these mortgages was issued under the "existing home" provisions of §§ 221 and 235 of the National Housing Act, 12 U.S.C. §§ 1715*l* and 1715z (1970).[1] Their complaint, on behalf of "all persons in the City of Philadelphia who have purchased, are in the process of purchasing, or may purchase in the future, homes under the 221(d)(2) and 235 Existing House Programs", alleges that Philadelphia FHA officials violated the Act by insuring mortgages on homes that did not meet the requirements of Philadelphia's Housing Code. The complaint asks for mandamus, injunctive and declaratory relief against officials of FHA and the Secretary of Housing and Urban Development (HUD), the department under which FHA operates. Plaintiffs also prayed for damages against the United States.

Plaintiffs moved for partial summary judgment supported by affidavits. Defendants filed no opposing affidavits but moved for dismissal of the complaint. The district court granted plaintiffs' motion in part, declaring that the FHA officials had violated the Act and enjoining them from insuring mortgages on properties not complying with the Housing Code. The court denied defendant-officials' motion to dismiss the complaint against them but granted the government's motion to dismiss the portion of the complaint seeking damages against the United States. 355 F.Supp. 29 (E.D.Pa.1973). Plaintiffs appeal the dismissal of their damage complaint, and defendants appeal the grant of partial summary judgment to plaintiffs.

We turn first to the defendants' appeal. Since they filed no counter affidavits they, of course, limit themselves to asserting reasons why the legal conclusions on which the summary judgment rests are erroneous.

## STANDING

■■ Defendants first contend that the district court was without jurisdiction to entertain the claims on which judgment was granted for plaintiffs because plaintiffs lack standing to sue for injunctive and declaratory relief. Where, as here, an action is brought in federal court challenging federal administrative action as inconsistent with a statute, the plaintiff must meet two requirements to show standing: (1) the challenged action must have injured some interest of the plaintiff, and (2) Congress must have intended that plaintiff be permitted to seek judicial review of such statutory violations. Sierra Club v. Morton, 405 U.S. 727, 733, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972); see Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153–154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Defendants do not deny that plaintiffs have met the first standing requirement. Defendants do, however, contend that plaintiffs do not satisfy the second standing requirement. Unlike the first requirement, the requisite of Congressional authorization does not derive from the limitation of Article III courts to decision of cases or controversies; it is not designed to ensure a contest between adverse interests. Instead, the second standing requirement derives from Congressional power to regulate, within limits, jurisdiction of the federal courts. See Sierra Club v. Morton, *supra* at 732 n. 3 of 405 U.S., 92 S.Ct.

---

1. These provisions allow the FHA to insure mortgages for nearly the full value of certain homes purchased by persons with incomes below stated levels. The existing home programs also contain limitations on the value of the home; mortgage insurance under these programs may be issued only on homes of low or moderate value. § 235 of the National Housing Act also provides in some cases for mortgage assistance payments to be made by FHA. Two of the named plaintiffs receive such payments.

1361; Association of Data Processing Service Organizations v. Camp, *supra* at 154 of 397 U.S., 90 S.Ct. 827.

■ Although the precise limits of Congressional power over federal jurisdiction are not clearly drawn, it is settled law that Congress can in legislating confide certain decisions to the discretion of administrative officials, prohibiting judicial review of the correctness of those decisions. E. g., Switchmen's Union v. National Mediation Board, 320 U. S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Similarly, subject to due process dictates, Congress can provide for administrative action and limit to a specified class the right to seek judicial review. E. g., L. Singer & Sons v. Union Pacific Railroad Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198 (1940). Thus, where administrative action is challenged as violative of a statute, federal courts must ascertain whether Congress has prohibited or provided for "review at the behest of the plaintiff." Sierra Club v. Morton, *supra* at 732 of 405 U.S., at 1365 of 92 S.Ct. [footnote omitted].

While it is not universally applicable, the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. (1970), generally serves as the starting point for determining Congressional intent regarding judicial review of federal administrative action.[2] Section 10 of the APA, 5 U.S.C. § 702 (1970), provides that any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The Supreme Court has interpreted this language as providing review to anyone who has suffered injury to an interest that is " 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated." Sierra Club v. Morton, *supra* at 733, 92 S.Ct. at 1365 [footnote omitted]; Association of Data Processing Service Organizations v. Camp, *supra* at 153–156 of 397 U.S., 90

S.Ct. 827. Defendants urge us to hold that plaintiffs do not satisfy the zone of interests test that has been read into the APA's standing provision.

The theory advanced by defendants in support of this contention is that plaintiffs' injured interest is in having the FHA Philadelphia Office insure only mortgages on homes complying with Philadelphia's Housing Code and that the allegedly violated provisions of the National Housing Act do not arguably protect this interest. We think that defendants misconceive the nature of the zone of interests test. The zone of interests test does not focus so precisely as defendants urge on the specifics of the complaint to determine the interest injured or on the allegedly violated statutory provision to determine the protection arguably afforded such interest.

■ Defendants argue that the relevant interest of plaintiffs for APA standing purposes is their interest in obtaining a remedy—FHA insurance of mortgages only on homes meeting housing code standards. That argument confuses the relevant interest for standing purposes under the APA with the merits of the case. This confusion is inherent in the "legal interest" test that some courts found embodied in the APA before the Supreme Court's rejection of that interpretation in *Data Processing.* The District Court, following the *Data Processing* test for determining whether a person is adversely affected or aggrieved as that phrase is used in the APA, correctly looked not to the remedy sought, but to the effect the challenged administrative action had on plaintiffs. Plaintiffs alleged an interest in obtaining a "decent home", and their pleadings and affidavits related facts showing that defendants' actions had impaired their ability to secure a decent home. We agree with plaintiffs and the district court that this is the relevant interest and that a sufficient showing had been

2. No argument is advanced by any party to except this case from the generally applicable provisions of the APA.

made that it was injured by the defendants' actions.

■ Defendants' contention that plaintiffs' interest was not within the zone of interests of the allegedly violated statute also must fail. Defendants' argument that we must look to the particular provision of the National Housing Act that defendants are charged with violating again confuses standing under the APA with the merits of plaintiffs' claim.[3] The district court complied with the Supreme Court's *Data Processing* decision by examining the statute, not the particular provision, purportedly violated to ascertain whether plaintiffs were "aggrieved . . . within the meaning of a relevant statute." Beyond dispute, the interest of low-income families in obtaining "decent" housing is among the interests protected by the National Housing Act. Thorpe v. Housing Authority, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); see 1954 U.S.Code, Cong. & Ad.News, pp. 2723, 2757–2758; 38 Op. Att'y Gen. 258 (1935). We agree with the district court that plaintiffs have standing to maintain this action for injunctive and declaratory relief.

## JURISDICTION

Defendants also contend that the district court lacked jurisdiction over the plaintiffs' claims for injunctive and declaratory relief. Numerous jurisdictional grounds are asserted by plaintiffs. The district court found that it had jurisdiction on each of the asserted grounds, and defendants contest each finding. We reach only one of these findings: that the court below had jurisdiction under 28 U.S.C. § 1337

(1970). Section 1337, without qualification as to the amount in controversy, grants district courts jurisdiction over actions "arising under any Act of Congress regulating commerce . . . ." Defendants argue that the National Housing Act, under which this suit arises, is not an act regulating commerce within the meaning of § 1337.

■ In support of their position, defendants cite Potrero Hill Community Action Committee v. Housing Authority, 410 F.2d 974 (9th Cir. 1969). In *Potrero Hill*, the Ninth Circuit held that the Housing Act constitutes welfare legislation, not legislation regulating commerce within § 1337. *Id.* at 979. The *Potrero Hill* court did not detail the analysis that supported its conclusion. Whatever reasoning supports that result, the law in this Circuit mandates a contrary conclusion. We stated in Imm v. Union Railroad Co., 289 F.2d 858 (3d Cir. 1961), that any act "based on the power of Congress to regulate interstate commerce" is an act regulating commerce within the meaning of § 1337. *Id.* at 860. Defendants urge that a qualification implicit in the unqualified language of *Imm* is that the commerce power must be a significant source of federal power in enacting a statute for it to be an act regulating commerce. See Murphy v. Colonial Federal Savings & Loan Association, 388 F.2d 609, 615 (2d Cir. 1967). Assuming such qualification to be embodied in *Imm*, we nonetheless find that the district court had jurisdiction over this case under § 1337. The commerce power clearly is a significant source of federal power for the National Housing Act, which was largely designed to stimulate the building trades

---

3. If there were a question whether Congress had placed the particular decision challenged here outside the pale of judicial review, we would, in order to resolve that question, be required to examine the specific provision of the National Housing Act allegedly violated before reaching the merits. *See* Association of Data Processing Serv. Organizations v. Camp, 397 U.S. 150, 156–157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). No question of un-reviewability is, however, raised here, and

our decision as to justiciability thus is limited to ensuring that plaintiffs have standing under Article III and § 10(a) of the APA; we do not here purport to interpret the provisions on reviewability contained in the introductory sentence to § 10 and in § 10(c) of the APA, 5 U.S.C. § 701 (1970). *See* Shannon v. Department of Housing and Urban Dev., 436 F.2d 809, 818–819 (3d Cir. 1970).

and increase employment, see United States v. Emory, 314 U.S. 423, 430, 62 S.Ct. 317, 86 L.Ed. 315 (1941), and to control various aspects of interstate commerce connected with mortgage financing, see 38 Op.Att'y Gen. 258, 262 (1935).

■ One further contention advanced by defendants to contest jurisdiction here is that plaintiffs' claim is frivolous and insubstantial, and, therefore, the court's jurisdiction must fail. Where, as here, the only dispute is a matter of federal law, federal "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); see Hart v. B. F. Keith Vaudeville Exchange, 262 U.S. 271, 273–274, 43 S.Ct. 540, 67 L.Ed. 977 (1923) (per Holmes, J.). Whether a cause of action has been stated in such cases is a matter of federal law that courts must exercise their jurisdiction to decide. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Bell v. Hood, *supra* at 682 of 327 U.S., 66 S.Ct. 773. Thus, we find that the district court had jurisdiction under § 1337 irrespective of the merits of plaintiffs' complaint.

## CLASS ACTION

Once over the jurisdictional hurdle, we must decide two questions of procedure before reaching defendants' contention on the merits. The first procedural question defendants raise is whether this suit is properly a class action. Plaintiffs' complaint seeks relief for the five named plaintiffs and for past, present and future Philadelphia purchasers of homes with mortgages insured under §§ 221 or 235 of the National Housing Act. Plaintiffs filed a motion for class action determination. Defendants did not oppose the motion below. They contend, however, that this cannot be treated as a class action because the

district judge never entered an order determining this to be a class action.

Rule 23 of the Federal Rules of Civil Procedure declares that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1). Rule 23 also requires the district court to include in its judgment a description of "those whom the court finds to be members of the class." Fed.R.Civ.P. 23(c)(3). The court below failed to comply with either of the requirements set forth above.

■ Plaintiffs have the burden of showing that they represent a class. See J. Moore, 3B Moore's Federal Practice ¶ 23.02–2 (2d Ed.1969). Because the class action determination affects the rights of class members not before the court, as well as named plaintiffs and defendants, it is not sufficient that plaintiffs make an uncontested motion for a class determination. The Rules impose the additional requirements of class determination and definition on the district judge. Relief cannot be granted to a class before an order has been entered determining that class treatment is proper. Cf. Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 414 F.2d 1168, 1171 n.8 (1969). And, since the class was not defined by order or in the judgment below, neither the parties nor this Court has any way of knowing what class would be bound. In light of the failure to meet the plain requirements of Rule 23 for maintenance of a class action, we must view the claim for injunctive and declaratory relief as the individual claim of the named plaintiffs.

## SUMMARY JUDGMENT—UNRE-QUESTED RELIEF

The second procedural point that must be resolved before reaching the merits is defendants' contention that the District Court erred by granting relief on summary judgment not requested in plaintiffs' motion for partial summary judgment. Defendants correctly note that

plaintiffs' motion made no explicit mention of injunctive or declaratory relief. The plaintiffs' complaint, however, had specifically requested such relief and the memorandum accompanying plaintiffs' motion spoke to such relief, as well as to their prayer for damages.

 Even were it not clear from these facts that the motion for partial summary judgment was intended to comprehend plaintiffs' request for injunctive and declaratory relief, granting such relief here would not be error. Rule 54 of the Federal Rules of Civil Procedure states that, except in the case of default judgments, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Fed.R.Civ.P. 54(c). The provision of Rule 54 is applicable to summary, as well as other, judgments. J. Moore, 6 Moore's Federal Practice ¶ 54.62 (2d Ed. 1969). We, therefore, reject defendants' contention that it was error for the court below to grant summary relief not explicitly requested in plaintiffs' motion.

## SUMMARY JUDGMENT—MERITS OF THE CLAIM

The essentials of the claim advanced by plaintiffs are relatively easily stated. 12 U.S.C. § 1715l(d)(2) (1970) [§ 221(d)(2)], incorporated by reference in § 1715z(i)(2) [§ 235], provides:

(d) To be eligible for insurance under this section, a mortgage shall—

\* \* \* \* \* \*

(2) be secured by a property . . . meeting the requirements of all State laws, or local ordinances or regulations, relating to the public health or safety, zoning, or other-

wise, which may be applicable thereto . . . .

Plaintiffs argue that the Philadelphia Housing Code is an ordinance applicable to homes in Philadelphia, that they purchased homes in Philadelphia, insured by FHA, which did not meet Code standards, and that the defendant-FHA and HUD officials, therefore, have violated the statutory directive. Defendants dispute each point of plaintiffs' argument.

First, defendants claim that the Philadelphia Housing Code is not an applicable local ordinance within the meaning of § 221(d)(2). In support of this claim, defendants invoke statutory history, quoting a House Report's statement that "[e]xisting housing units . . . would be eligible under [§ 235] if the units meet standards prescribed by the Secretary [of HUD]." H.R.Rep.No.1585, 90th Cong., 2d Sess. 8 (1968), U.S.Code Cong. & Admin.News 1968, p. 2880. From this quoted statement, defendants urge us to find that housing approved for FHA mortgage insurance need only meet standards set by the Secretary of HUD and not local code standards. The remainder of the paragraph from which defendants quote, however, makes clear that the standards referred to do not supplant other statutory requirements such as compliance with local ordinances; instead, the paragraph refers to an additional limitation: mortgage insurance under § 235 is conditional on the Secretary's allocation of sufficient FHA insurance funds to existing housing in the particular area.[4] The Report encourages the Secretary to divide FHA insurance funds between new and existing housing in each geographical area in such a manner that the Congress' long-range housing goals will be achieved.

---

4. The paragraph relied on by defendants reads:

Existing housing units, however, would be eligible under this program if the units meet standards prescribed by the Secretary. The committee expects that the Secretary will allocate contract funds between existing and new housing units in a manner which furthers the long-range housing goal of provid-

ing a decent living environment for all American families. It further expects that, in areas where the housing market is tight and added demand for existing housing could seriously inflate prices, the Secretary will generally permit assistance only with respect to new or substantially rehabilitated dwellings.

The Housing Act does require properties to meet certain housing standards set by the Secretary of HUD, but the legislative history relevant to this requirement does not indicate that it qualifies the operation of the local ordinance provision. See 1959 U.S.Code, Cong. & Ad.News, p. 2857. The terms of the statute are clear, and we find no statutory history that casts doubt on our conclusion that the Philadelphia Housing Code is a local ordinance relating to the public health or safety applicable to homes in Philadelphia.

Defendants next argue that they have complied with the Philadelphia Housing Code. Having failed to file affidavits in opposition to the plaintiffs' motion for summary judgment, defendants cannot contest the district court's finding that plaintiffs' homes do not, and did not at the time the FHA insured mortgages on them, meet Philadelphia Housing Code standards. Defendants' contention instead is that they, not the homes, complied with the Code; the Code does not require an inspection before sale of an existing home; no inspection was made, hence no violations discovered. To require that FHA inspect homes to uncover Code violations before insuring mortgages on them would, defendants assert, impose on FHA an obligation not contained in the Code.

In considering defendants' argument, we note that § 221(d)(2) requires not that the actions of FHA officials responsible for insuring mortgages comply with local regulations, but rather that the properties securing the FHA-insured mortgages comply. We need not, however, decide whether § 221(d)(2) requires that the FHA conduct inspections to assure that homes for which FHA has made tentative mortgage insurance commitments are free from all Code violations. Plaintiffs' uncontested affidavits establish that Philadelphia FHA officials have not made any attempt to determine whether homes are subject even to major code violations. The narrowest reading we could give to § 221(d)(2) would require that defendants make reasonable efforts to ascertain that the homes securing FHA-insured mortgages meet Philadelphia Housing Code standards. Since the facts established below demonstrate that this has not been done, plaintiffs properly prevailed on the merits of their claim.

Finding merit in plaintiffs' claim, we turn to defendants' final contention: that named plaintiffs are not entitled to declaratory or injunctive relief. In part, this contention is a recast version of defendants' argument on standing. Defendants urge us, in effect, to find that plaintiffs have no legal right to relief and, therefore, that their suit for declaratory and injunctive relief should be dismissed. Although the cases requiring plaintiffs to have a "legal right" to satisfy standing requirements have been rejected, we are asked to find that plaintiffs must show a legal right to the relief granted.

Since the merger of law and equity sides in federal courts, there has been an increasing tendency to ignore the former distinctions between law and equity. Certainly, former procedural distinctions properly have been abandoned. See Fed.R.Civ.P. 1. Nonetheless, some differences remain. To secure relief on a claim at law, a plaintiff must, by definition, show that he has a "legal right." Thus, one who seeks to secure damages for violation of a statute or a constitutional provision must demonstrate a legislative or constitutional intention that the provision relied upon protects the specific plaintiff from harm and comprehends award of damages to him when such harm occurs. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395–397, 91 S.Ct. 1999, 29 L. Ed.2d 619 (1971); J. I. Case Co. v. Borak, 377 U.S. 426, 431–433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Where, however, equitable remedies are sought, there is no requirement that the plaintiff be invested with a legal right. See Scripps-Howard Radio, Inc. v. Federal

Communications Commission, 316 U.S. 4, 14–15, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 551–552, 57 S.Ct. 592, 81 L.Ed. 789 (1937). Plaintiffs who satisfy constitutional and statutory standing requirements may obtain equitable relief against harm from administrative action even though the only legally protected interests are those of the public. See Merriam v. Kunzig, 476 F.2d 1233 (3d Cir. 1973); cf. Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). We, therefore, reject defendants' contention insofar as it would require plaintiffs to demonstrate a legal right to relief.

Before addressing the rest of defendants' argument on this contention, we feel impelled to comment on the effect the Supreme Court's recent decision in National Railroad Passenger Corp. v. National Association of Railroad Passengers, —— U.S. ——, 94 S.Ct. 690, 38 L.Ed.2d 646 (January 9, 1974), must have on our determination. The Supreme Court's decision (hereinafter "Amtrak"), rendered after argument in this case, resulted in dismissal for failure to state a cause of action of a private injunctive suit to enforce the "Amtrak Act." The only statute claimed to give the Amtrak plaintiffs a cause of action was the Amtrak Act, and after reviewing the pertinent legislative history, the Court concluded that Congress had intended to preclude injunctive suits for enforcement of the Act other than those specifically authorized in the Act.

We need not make a similar inquiry into the National Housing Act at this point since the plaintiffs here have asserted a valid cause of action for equitable relief under the Administrative Procedure Act. As relevant, the APA provides that "except to the extent that statutes preclude judicial review . . . [a] person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review

thereof." 5 U.S.C. §§ 701, 702 (1970). The form of action prescribed is "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction . . . ." 5 U.S.C. § 703 (1970). As set forth above, the plaintiffs meet the requirements of these APA provisions, and no question of unreviewability has been raised. We, thus, find no merit in defendants' contention to the extent that it might, in light of Amtrak, be read as challenging plaintiffs' statement of a cause of action.

■ Defendants' contention, however, embraces another idea: that the relief granted plaintiffs must be calculated to redress the wrong to them. This idea clearly is incorporated into the federal law of declaratory judgments. In the early part · of this century, the ability of federal courts to render declaratory judgments consistent with the Constitution was the subject of considerable debate. The debate ended with the Supreme Court's decision in Aetna Life Insurance v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). *Haworth* upheld the constitutionality of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1970), noting that the Act limited availability of declaratory judgments to instances of actual controversy between parties asserting adverse interests. 300 U.S. at 239–42. The Supreme Court has repeatedly reaffirmed the *Haworth* declaration that declaratory judgments are not appropriate for decision of abstract questions but must be confined to resolving the interests of contesting parties. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272–273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

■ To sustain the declaratory judgment, then, we must determine that the issue resolved was central to an immediate, legal dispute between the par-

ties before the district court. We approach this determination cognizant of the district court's significant discretion in the grant or withholding of declaratory judgment. See Samuel Goldwyn, Inc. v. United Artists Corp., 113 F.2d 703, 709 (3d Cir. 1940). Plaintiffs here allege a right to have their homes, bearing FHA-insured mortgages, comply with Philadelphia Housing Code standards; they seek declaratory, injunctive and damage relief. In light of the claims advanced by plaintiffs, we find that the district court did not abuse its discretion in rendering declaratory judgment: it was faced with a present controversy involving adverse legal interests; and the district court's declaration concerning construction of § 221(d)(2) of the National Housing Act resolved an issue central to the dispute between the parties.

 The argument may be advanced that the declaratory judgment rendered failed to settle the rights of the named parties. See United States Fidelity & Guaranty Co. v. Koch, 102 F. 2d 288, 294 (3d Cir. 1939); J. Moore, 6A Moore's Federal Practice ¶ 57.08 [4] (2d Ed. 1969). Were the district court faced with the claim for declaratory judgment alone, its declaratory judgment, which only construes the statute and does not declare the rights of parties before it to further relief, might be subject to attack as a mere abstract declaration of law. Declaratory judgments, however, are available where appropriate even though other remedies are also available, 28 U.S.C. § 2201 (1970), and here the district court was required to rule on claims for injunctive and damage, as well as declaratory, relief. Where in the same suit a district court determines the rights of specific parties to other relief, we cannot say that a declaratory judgment limited to construc-

tion of the statute from which plaintiffs claimed their right to relief flowed is an abstract declaration.

 Defendants' contention that the relief granted was improper extends to injunctive as well as declaratory relief. While plaintiffs may secure redress for violations of the National Housing Act even though they have no legal right to administrative compliance with the Act, plaintiffs are entitled only to redress of their personal grievances. Injunctions, which carry possible contempt penalties for their violation must be tailored to remedy the specific harms shown rather than to "enjoin 'all possible breaches of the law.' " Hartford-Empire Co. v. United States, 323 U.S. 386, 410, 65 S.Ct. 373, 385, 89 L.Ed. 322 (1945); Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905). The injunction sought and granted below does not affect plaintiffs in any way. The injunction prevents defendants from insuring mortgages under the §§ 221 and 235 programs on homes in Philadelphia that do not comply with the Philadelphia Housing Code. None of the plaintiffs alleges any intent to purchase another home under those programs. Plaintiffs instead allege that they are now living in homes not meeting Code standards and are unable to secure funds to repair their homes. We find that the injunction granted by the district court was not framed to remedy the harm to plaintiffs.[5] The order of the court below granting injunctive relief will be vacated and the cause remanded so that, if possible, an injunction may issue more narrowly drawn to meet the needs of this case.

## JURISDICTION OVER DAMAGE CLAIM—TUCKER ACT

We now take up consideration of plaintiffs' appeal from dismissal of their

---

5. In a case such as this, where the injunction does not aid plaintiffs in any way, it is not necessary to balance carefully the various factors that control the issuance and scope of injunctions to determine if the proper protection has been afforded interests of

plaintiffs, defendants and the public. But, while there is no need to articulate it, we recognize that the balancing of those interests, in gross, underlies our decision. See cases cited in J. Moore, 7 Moore's Federal Practice ¶ 65.18 [3] (2d Ed. 1969).

claim for damages. The district judge stated as his reason for dismissing the damage claim that the court lacked jurisdiction over the claim. Plaintiffs argue that the court below confused lack of jurisdiction with failure to state a claim. Defendant on the damage claim, the United States, would find no distinction between those grounds, for reasons we will discuss later, and asks us to read the district court opinion as properly finding that jurisdiction did not exist and that no claim was stated on which relief could be granted. We consider both grounds asserted to justify dismissal.

■ The jurisdictional basis asserted by plaintiffs is the Tucker Act provision giving district courts jurisdiction, concurrent with the Court of Claims, over claims "against the United States, not exceeding $10,000 in amount, founded either upon the Constitution or any Act of Congress . . . ." 28 U.S.C. § 1346(a)(2) (1970). The district court held that plaintiffs' claim for damages was not "founded upon" an Act of Congress within the meaning of the Tucker Act. The district court's reasoning, advanced by the United States on appeal, was that the Tucker Act grants jurisdiction to award damages to persons who have a statutory right to receive a sum of money; and, since the District Court found that the National Housing Act confers no such right on plaintiffs, the court decided that it had no Tucker Act jurisdiction. We disagree.

As we noted above in connection with the jurisdictional arguments of defendants to the claims for declaratory and injunctive relief, jurisdiction is not defeated by the possibility that plaintiffs will not be entitled to recover. Plaintiffs allege that the National Housing Act implicitly grants them the right to

receive damages from the United States for violation of specific provisions. They have asserted a claim "founded upon" an Act of Congress, and their allegation supports the district court's jurisdiction to decide the merits of their claim.[6] We reject any statement to the contrary contained in Eastport Steamship Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), on which the court below relied.

## FAILURE TO STATE A CLAIM

The United States also urges us to affirm the dismissal on the ground that plaintiffs failed to state a claim upon which relief could be granted, again advancing the argument that the Tucker Act provides for damage awards only to persons having a right to receive money from the government. Under the view argued by the government, and adopted by the district court, the Tucker Act restores money improperly taken or releases money improperly withheld, but affords no damage remedy for other statutory violations. Plaintiffs assert both that they have a right under the National Housing Act to receive money and that a damage remedy should be implied to protect them from harm where the government fails to comply with the "local ordinance" provision of § 221(d)(2).

■ The second part of plaintiffs' argument addresses itself to a different point than that primarily argued by the United States. This latter part of plaintiffs' argument is relevant to the existence, or absence, of a cause of action for damages fairly to be inferred from § 221(d)(2). The first part of plaintiffs' argument is relevant to a different point, on which issue is joined by the government: whether the Tucker Act waiver of sovereign immunity extends to damage recoveries on causes of action other than for money wrongly

6. The Tucker Act, in providing for district court jurisdiction over certain claims, has been construed as a waiver of sovereign immunity. And while the presence or absence of jurisdiction must be determined, accepting plaintiffs' allegations as true, the extent of the government's waiver of sovereign immunity is unaffected by the complaint. It thus may be possible for the complaint to state a claim "founded upon" an Act of Congress for jurisdiction purposes yet outside that language for immunity purposes.

withheld or for property wrongly taken.[7] We do not pass on the scope of the Tucker Act's waiver of sovereign immunity because we find that plaintiffs have failed to show that a right to damages is implicit in § 221(d)(2).

In order to find a damage remedy implicit in § 221(d)(2), we must determine (1) that the purpose of the provision violated is to protect the class of persons to which plaintiffs belong, and (2) that a damage remedy is necessary to effectuate that purpose. Bivens v. Six Unknown Named Agents, *supra* at 395–397 of 403 U.S., 91 S.Ct. 1999; J. I. Case Co. v. Borak, *supra* at 431–433 of 377 U.S., 84 S.Ct. 1555. We are unable to find that § 221(d)(2) was designed to protect plaintiffs. The legislative history is devoid of any clear statement of the purpose for the requirement that homes insured by FHA mortgages comply with local ordinances and regulations. The wording of the provision (requiring that, to be eligible for insurance, mortgages be secured by properties complying with local ordinances) and the context in which it was adopted (as part of a section regulating loan ratios and maximum property value insurable, and permitting other financial restrictions to be imposed as prerequisites to mortgage insurance) support the government's contention that the provision was intended to assure the United States of adequate security for the mortgages FHA insured. See 1959 U.S.Code, Cong. & Ad.News, p. 2857. Given the absence of a clear Congressional intent that § 221(d)(2)'s local ordinance provision protects prospective homeowners, we find no cause of action for damages implicit in the section. The district court order dismissing plaintiffs' claim for damages was correct.

The case is remanded for further proceedings consistent with this opinion.

---

7. The distinction between these points is probably best illustrated by reference to the Supreme Court's decision in Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* was a damage suit against government agents for violation of plaintiffs' Fourth Amendment right to freedom from unreasonable searches. The Court held that plaintiffs had stated a cause of action and remanded to the Court of Appeals to determine if relief was barred by immunity.

The United States claims that it has consented to suit only in cases where the plaintiff had a right to money or property. Had the *Bivens* plaintiffs sued the United States, the government presumably would have argued on remand that, while a cause of action for damages could be inferred from the Fourth Amendment, sovereign immunity bars recovery because the Fourth Amendment grants no right to receive money, but only a right to be free from certain searches. We do not intimate any view concerning the validity of this approach.